781 So.2d 807 (2001)
STATE of Louisiana
v.
Terry L. TUCKSON.
No. 00-KA-1408.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
*809 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for appellant, Terry L. Tuckson.
Paul D. Connick, Jr., District Attorney, 24th Judicial District Court, State of Louisiana, Thomas J. ButlerCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Gregory M. Kennedy Trial Counsel, Assistant District Attorneys, Gretna, Louisiana, for appellee, State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., JAMES L. CANNELLA and WALTER J. ROTHSCHILD.
CANNELLA, Judge.
Defendant, Terry L. Tuckson, appeals from his convictions of armed robbery and first degree robbery and his sentences, respectively, to 75 years and 25 years, both imprisonment at hard labor to run consecutively. For the reasons which follow, we affirm and remand.
In the early morning hours of January 27, 1999, Evelyn Honore (Honore) was working her first shift as a clerk at an EZ Serve convenience store on Loyola Drive in Kenner. Defendant entered the store and asked Honore for a fifth of VO liquor, but did not have enough money to pay for it. Honore refused to give Defendant the bottle and he left the store. He returned an hour or two later, pointed a gun at Honore, and placed a piece of paper on the counter on which was written "if I pull it you die. Give it up." The Defendant demanded money and "scratch off" lottery tickets. Honore complied with his demands. The Defendant left the store with the cash and tickets. Honore called the police.
Although the EZ Serve store had a video surveillance camera, police officers found that it had malfunctioned and had failed to record the incident. Honore later identified the Defendant in a photographic lineup as the man who had robbed her.
Ronnie Ranshi, the store's manager, called the Louisiana Lottery Corporation's (Lottery) security division to report the code numbers of the stolen lottery tickets. Danny Green (Green), a senior investigator with the Lottery, testified that when a lottery ticket is reported stolen, it is "flagged" so that he is notified by computer when someone attempts to redeem it.
On January 29, 1999, Vivian Whitley (Whitley) tried to redeem one of the stolen lottery tickets at the store from which it was stolen. The lottery office was notified by computer that one of the stolen tickets had surfaced. Green in turn alerted Detective Michael Glaser. Detective Glaser went to the EZ Serve store and learned from the clerk that the woman who had tried to redeem the lottery ticket was at a restaurant across the street. The clerk pointed out Whitley to Detective Glaser who questioned Whitley and her son, Joseph Whitley. He learned that Joseph Whitley, an acquaintance of the Defendant's, had purchased the tickets from the Defendant. Joseph Whitley then gave the tickets to his mother. Joseph Whitley gave Detective Glaser the Defendant's name and also identified the Defendant in a photographic lineup.
On the morning of February 6, 1999, Iola Wesley (Wesley) was working as a cashier at an EZ Serve store on Airline Highway in Kenner. At about 10:00 a.m., the Defendant entered the store and attempted to buy a bottle of Thunderbird wine. The Defendant did not have enough *810 money, so Wesley took the wine from him. The Defendant left the store. He returned a short time later and began walking around the store. He then approached the counter where Wesley was standing. The Defendant took a carton of cigarettes. Wesley tried to take it from him. The Defendant told her that he had tried to do it the "right way," but that she was forcing him to resort to stealing.
Wesley told the Defendant that she was pregnant and that he could take whatever he wanted from the store. The Defendant threatened to kill her and her baby. He then took several cartons of cigarettes and stuffed them into his shirt and jacket. Wesley testified that the Defendant did not tell her that he had a gun, but she could see the handle of a gun inside of his jacket. The Defendant left the store after warning her not to use the telephone. Wesley then called the police.
Police obtained a store surveillance tape from the time of the robbery. Although the tape shows the Defendant at the counter, the camera did not record the taking of the cigarettes. Wesley identified the Defendant in a photographic lineup and in court as the man who had robbed her. She also testified that State's Exhibits 7, 8, 9 and 10, (still photographs taken from the surveillance tape), accurately depict the scene and the Defendant at the time of the robbery.
Sergeant Alan Abadie, a latent fingerprint expert with the Kenner Police Department, lifted fingerprints at the EZ Serve store from a liquor bottle which he learned had been touched by Wesley's robber. He then used the police computer to compare the fingerprint with a known fingerprint of the Defendant. He found that the Defendant's fingerprint was a match for the one obtained at the store.
In March of 1999, Deputy Matthew Roth of the Jefferson Parish Sheriffs Office learned from an anonymous caller the whereabouts of a subject wanted for two Kenner armed robberies. Deputy Roth and other officers went to the location named by the informant and saw the Defendant standing in front of a barber shop. Upon seeing the officers approach, the Defendant went inside the business. The officers followed the Defendant into the barber shop and arrested him. The officers searched the Defendant and found a partially burned hand-rolled cigarette which they believed to contain marijuana.
On May 17, 1999, the Jefferson Parish District Attorney filed a bill of information charging the Defendant with two counts of armed robbery, in violation of La.R.S. 14:64.
Jury selection took place on October 12, 1999. Six jurors were selected from the first voir dire panel. Those jurors were then sworn by the trial court. Six more jurors were chosen from the second voir dire panel. They were immediately sworn. Two alternate jurors were selected from the third panel. They were also sworn. The State requested that the jury not be sworn together until the following day. The trial court agreed to the State's request over objection by defense counsel. The trial judge sent the jury home for the night.
On the following day, October 13, 1999, the assistant district attorney nolle prosequied the charges against the Defendant. He asserted that "since the jury was not sworn in, jeopardy has not attached...." He further announced the State's intention to file a new bill of information that day on the same charges. The trial court granted the State's motion over Defendant's objection. The trial court then dismissed the jury.
On October 13, 1999, the State refilled the two armed robbery charges against the *811 Defendant in a new bill of information, with a new number. The Defendant was arraigned on October 14, 1999 and pled not guilty.
On November 23, 1999, the Defendant filed a Motion to Quash, asserting that the State could not now try him since jeopardy had attached when the first jurors were sworn on October 12, 1999. The Defendant's motion was heard and denied on January 6, 2000.
The Defendant was tried by a jury of 12 persons on January 11th and 12th, 2000. At the conclusion of trial, the jury returned a verdict of guilty as charged as to Count One. On Count Two, the jury found the Defendant guilty of the lesser and included offense of first degree robbery. On January 18, 2000, the State filed a habitual offender bill of information, alleging that the Defendant was a second felony offender.
On January 20, 2000, the Defendant filed a Motion for New Trial which the trial court denied that day. The Defendant waived sentencing delays.[1] The trial court then sentenced the Defendant on Count One to 50 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On Count Two, the trial court sentenced the Defendant to 25 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial court ordered the sentences to run consecutively. On January 20, 2000, the Defendant filed a Motion for Appeal and a Motion to Reconsider Sentence. On that day the trial court granted the appeal motion and denied the sentence reconsideration motion.
The Defendant was arraigned on the habitual offender bill of information on January 20, 2000 and he denied the State's allegations. On February 15, 2000, the defense filed a written response to the habitual offender bill. A habitual offender hearing was held on June 1, 2000. The trial court found the Defendant to be a second felony offender, set aside his original sentence on Count One and imposed an enhanced sentence of 75 years imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial court further stipulated that the enhanced sentence was to run consecutively to the sentence imposed on Count Two. It is from these convictions and sentences that the Defendant appeals. The Defendant assigns three errors on appeal.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the Defendant argues that the trial court erred in denying his motion to quash the second bill of information on the grounds that it violated the principles of double jeopardy. More particularly, the Defendant argues that he was subjected to double jeopardy when the State dismissed the charges against him after a jury had been selected and each member was individually sworn, and then refilled the charges later that same day. The Defendant first raised this issue below in a Motion to Quash, which was denied without reasons by the trial court on January 6, 2000.
The State contends that double jeopardy principles were not violated. The State points out that La.C.Cr.P. art. 592 provides that "jeopardy begins when the jury panel is sworn pursuant to Article 790." La.C.Cr.P. art. 790 provides that the jurors shall be sworn "together to try the case ...". Thus, the State argues that since the jury in this case was not sworn together, as a group, jeopardy did not attach. Therefore, it is argued that the Defendant was not placed in double jeopardy *812 by the dismissal and later refiling of the charges against him.
The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similar protections are offered by Article I, § 15 of the Louisiana Constitution, and La.C.Cr.P. art. 591.
Article 592 of the Louisiana Code of Criminal Procedure, in accord with dictates from the United States Supreme Court set out in Crist v. Bretz, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), provides when jeopardy attaches in a jury trial proceeding. It provides in pertinent part:
When a defendant pleads not guilty and is tried by jury, jeopardy begins when the jury panel is sworn pursuant to Article 790.
Correspondingly, La.C.Cr.P. art. 790 provides:
When selection of jurors and alternate jurors has been completed, and all issues properly raised under Article 795 have been resolved, the jurors shall then be sworn together to try the case in a just and impartial manner, each to the best of his judgment, and to render a verdict according to the law and evidence.
The swearing of the jury "... together to try the case..", La.C.Cr.P. art. 790, is distinguished from the individual swearing of jurors provided for in La.C.Cr.P. art. 788, which provides in pertinent part:
After the examination provided by Article 786, a prospective juror may be tendered first to the state, which shall accept or challenge him. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. This Article is subject to the provisions of Articles 795 and 796.
The record of the October 12, 1999 proceedings shows that the trial court swore the jurors pursuant to Article 788 in three separate groups as they were selected. The record contains notations that the jurors were sworn, but not the specific language which the trial court used. At the conclusion of the proceedings of October 12, 1999, after a panel of twelve jurors and two alternates were selected, the trial judge, over defense counsel's objection, declined to swear the jurors together, or as a group as required by article 790.
While there is no evidence in the record of October 12, 1999 of any motion by the State to delay the swearing in of the jurors "... together ..." that day, the State in brief admits that it requested that the entire jury not be sworn until the following day.[2] Nevertheless, because the jury was not sworn pursuant to Article 790, as provided in Article 592, we are constrained to find that jeopardy did not technically attach or begin in this case prior to the State's dismissal of the initial bill of information. Thus, the re-institution of the charges against this Defendant did not put him in jeopardy a second time for the same offense. Therefore, we find no error in the trial court ruling denying the Defendant's *813 motion to quash based on double jeopardy grounds.
The precise issue presented by the facts of this case was not one concerning double jeopardy, but rather whether the trial court erred in refusing to swear in the jury "... together to try the case ..." immediately following the selection of the two alternate jurors. We find no reversible error under the circumstance before us.
As provided in La.C.Cr.P. art. 795, prior to the jury being sworn together or as a whole, either the defense or the State may still exercise his/its challenges for cause. The defense suffered no prejudice from the trial court's refusal to swear the jury immediately. The decision effected both the defense and the State in the same way. As a matter of practice, trial court judges will sometimes wait until trial is ready to commence before swearing the jury together or as a whole, just in case of unforseen events.
In a related matter, this Court is concerned with the use by the State of its powers to dismiss charges against a defendant, followed by refiling of those same charges, in order to obtain a continuance of the trial. The ruling in this case might be different if that scenario had been argued and proven. There are other, more appropriate procedural vehicles at the State's disposal when it finds its witnesses are unavailable for trial. For instance, the State might have requested and been granted, if appropriate, a trial continuance. See La.C.Cr.P. arts. 709, 710. However, based on the record before us, we do not find the abuse of discretion that would prevent the trial of this Defendant on the charges filed against him. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, the Defendant complains that the trial court erred in failing to grant his motion for a mistrial after the State's fingerprint expert, Sergeant Alan Abadie, made reference to the Defendant's prior bad acts during his testimony.
Sergeant Abadie was asked to describe the process by which he compared latent fingerprints taken from the Airline Highway EZ Serve to those of known subjects. He testified that he uses the state's Automated Fingerprint Identification System (AFIS) as a tool. Sergeant Abadie explained that in this case, his office had developed a suspect. He entered known personal information about the suspect into the AFIS and the system gave him five possible matches in order of probability. The AFIS thus allowed him to narrow his search for matching fingerprints. He was then able to make a match by comparing the latent print with one of those selected by the AFIS. He testified that he did not look at the other four matches which the computer gave him. The foregoing information was elicited primarily during cross-examination by the Defendant's counsel.
The testimony at issue here was elicited by the prosecutor during re-direct examination:
Q. [Prosecutor]: And when you indicated that you programed (sic) it with some information to narrow the search, did you tell it to look for Mr. Tuckson's fingerprints?
A. [Sgt. Abadie]: No, sir, I told it to look for a black male born in, I believe it was 1973. And what that will do, it will search every black male booked into the system that's born in 1973.
During a bench conference, the defense moved for a mistrial, arguing that the jury had now been informed by way of the prosecutor's question that the Defendant was in the State's computer system, and *814 had therefore committed prior bad acts. The trial court denied the motion. The Defendant now renews his argument.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial unless the probative value of the evidence substantially outweighs its unfair prejudicial effect, and unless it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. La.C.E. arts. 403 & 404, State v. Cangelosi, 98-589 (La.App. 5th Cir.11/25/98), 722 So.2d 1107.
La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible...
A police officer is not considered a "court official" within the meaning of article 770. State v. Jackson, 00-191 (La. App. 5th Cir.7/25/00), 767 So.2d 833; State v. Watson, 449 So.2d 1321 (La.1984). However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the State and therefore triggers the rule mandating a mistrial. State v. Jones, 00-162 (La.App. 5th Cir.7/25/00), 767 So.2d 862; State v. Hester, 99-426 (La.App. 5th Cir.9/28/99), 746 So.2d 95, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
A mistrial is warranted only if a comment or remark results in substantial prejudice to the accused. La.C.Cr.P. art. 771; State v. Jackson, 00-191 at p. 4, 767 So.2d at 836.
Based on the record before us, we do not find that the Defendant suffered any prejudice. The question and response at issue made no specific mention of past crimes committed or alleged to have been committed by the Defendant. In State v. Rhodes, 95-54, p. 4 (La.App. 5th Cir.6/28/95), 657 So.2d 1373, 1376-1377, writ denied, 95-2265 (La.3/14/97), 690 So.2d 28, this Court found that La.C.Cr.P. art. 770 is not applicable unless the inference clearly constitutes a comment on other crimes committed or alleged to have been committed by the defendant.
Moreover, the prosecutor's line of questioning appears to have been aimed at eliciting the steps in the process which Sergeant Abadie used and not at calling the jury's attention to the Defendant's prior bad acts. In State v. Jones, 00-162 at p. 4, 767 So.2d at 866, this Court found there was no evidence that the prosecutor was trying to elicit information about other crimes or bad acts, where his questioning was aimed at setting up a sequence of events, and there was no specific mention of prior crimes.
Further, we note that an improper reference to other crimes is subject to harmless error analysis. State v. Johnson, 94-1379, p. 7 (La.11/27/95), 664 So.2d 94, 101-102. We find that the verdict rendered was unattributable to any statements by Sergeant Abadie that might have alluded to prior bad acts by the Defendant and the denial of the mistrial based on those grounds. In fact, the extensive amount of information elicited by the defense from Sergeant Abadie could arguably have been just as likely to imply prior bad acts by the Defendant as the question asked by the prosecutor.
Thus, we find no error in the trial court ruling denying the Defendant's request for *815 a mistrial based on the witness' veiled reference to other crimes committed by him. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment of error, the Defendant requests that we review the record for any errors patent on the face of the record.
The record in this case, which included the habitual offender proceedings, was reviewed for errors patent. La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). We found one such error.
In sentencing the Defendant, the trial court failed to fully advise the Defendant of the time limitations for filing an application for post-conviction relief. At the time of the habitual offender sentencing, the trial judge told the Defendant, "You have two years to file for post conviction relief." The Defendant should have been specifically advised that he had two years "after the judgment of conviction and sentence has become final...." La. C.Cr.P. art. 930.8; State v. Carter, 96-358, p. 14 (La.App. 5th Cir.11/26/96), 685 So.2d 346, 354.
Therefore, we remand the case to the trial court with instructions to send appropriate written notice to the Defendant of the correct statement of the law regarding the prescriptive period for post conviction relief and to file written proof in the record that the Defendant received the notice. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562; State v. Kershaw, 94-141 (La.App. 5th Cir.9/14/94), 643 So.2d 1289.
Accordingly, for the reasons set out above, the Defendant's convictions of armed robbery and first degree robbery and his respective sentences of 75 years, as a habitual offender, and 25 years, both imprisonment at hard labor, without benefit of parole, probation or suspension of sentence, to run consecutively, are affirmed. The case is remanded to the trial court to provide proof in the record of the Defendant's receipt of appropriate notice, under La.C.Cr.P. art. 930.8, of the prescriptive period for post conviction relief.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED.
NOTES
[1] Defense counsel stated, "Mr. Tuckson stands ready for sentencing."
[2] This is supported by the record. On the morning of October 13, 1999, in dismissing the jury, the trial judge stated "as I mentioned earlier to you all, back in the jury room, we had a problem with one of the witness [sic] not now available for trial, so we're going to have to have a mistrial, and try the case over...." Further, the record of the Defendant's trial on the second bill of information contains references to the trouble which the State was having in getting the victim, Iola Wesley, to come to court. It appears that she was the witness that was missing on October 13, 1999.