926 So.2d 637 (2006)
STATE of Louisiana
v.
Glenn SMART.
No. 05-KA-814.
Court of Appeal of Louisiana, Fifth Circuit.
March 14, 2006.
*642 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Thomas Block, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Glenn Smart, In Proper Person, Kinder, Louisiana.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Defendant, Glenn Smart, was found guilty of distribution of cocaine in violation of LSA-R.S. 40:967 A, and was sentenced to imprisonment at hard labor for six years with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. After the filing of a multiple bill by the State, the trial court found defendant to be a second felony offender, vacated his original sentence, and sentenced defendant to imprisonment at hard labor for 15 years with the first two years to be served without benefit of parole, probation or suspension of sentence. The trial court further stated that the balance of the sentence was to be served without benefit of probation or suspension of sentence. Defendant's motion to reconsider sentence was denied by the trial court. The defendant now appeals from his conviction and sentence.
Defense counsel filed a brief in which he argues that the trial court erred in denying his motion for mistrial, and that the trial court imposed an excessive sentence. In addition, the defendant filed a pro se brief in which he also alleges that the sentence imposed was excessive, and furthermore that the evidence was legally insufficient to support the verdict, that he was denied ineffective assistance of counsel at the multiple bill and sentence hearing and that the trial court erred in failing to ensure an adequately perfect record of the trial.

FACTS
The following was adduced at the trial of this matter. Paul Smith of the Jefferson Parish Sheriff's Office (JPSO), whose undercover name was Agent Alan James, testified that, on July 29, 2003, at approximately 1:05 p.m., he traveled to the Scottsdale area in Harvey, Louisiana, a "high drug trafficking area", in a vehicle equipped with a video recorder and a transmitter, to attempt to purchase narcotics. As he was driving around, he pulled up to a group of people and asked them if they knew where he could get a "twenty."
A man, later identified as defendant, walked out of the group and asked Agent James what he wanted. Agent James told defendant he wanted a "twenty," and defendant told him he would have to exit the vehicle. Once Agent James complied with *643 defendant's request, defendant told him to put the money on the hood of the vehicle. Agent James refused and told defendant to place the narcotics on the hood of the vehicle, which he did. Agent James then picked up the narcotics, put the (pre-recorded) money on the hood of the vehicle, and got into his vehicle.
After the transaction, Agent James observed defendant pick up the money, put it in his pocket, and go in between two buildings in the apartment complex. As Agent James was leaving the area in his vehicle, he provided information to the surveillance team over the transmitter regarding the transaction. He also provided a description of defendant as being approximately 6'1" to 6'2" with a medium build and wearing a black shirt with black shorts. The videotape recorded that day was played for the jury; however, Agent James testified that the videotape did not show defendant since defendant insisted he (Agent James) exit the vehicle. Agent James positively identified defendant in a photographic lineup shown to him by Agent Aaron Wilkie on August 4, 2003, and he also positively identified defendant in court.
JPSO Agent Corey Wilson testified that he positioned himself in the area of 1108 Scottsdale prior to Agent James coming into the area, and that he observed the transaction between Agent James and defendant. Agent Wilson testified that, after the transaction occurred, defendant walked between two buildings for approximately three minutes and then came right back out. He subsequently advised the other agents of defendant's location.
JPSO Agent Aaron Wilkie testified that, after speaking with Agent Wilson, he drove to 1108 Scottsdale, exited his vehicle along with Deputy Magee, and conducted a field interview of defendant, eliciting information from defendant including his name, address, date of birth, and a physical description. Agent Wilkie completed a "field interview card" which documented his meeting with defendant, and he also took a Polaroid picture of defendant at that time. Agent Wilkie testified that defendant resided at 1108 Scottsdale Drive in Apartment D, approximately two feet from where the drug transaction occurred. He further testified that it was approximately six or seven minutes from the time the transaction occurred until the time he stopped defendant. He also indicated that he conducted a preliminary field test on the white rock which was positive for cocaine.
The state and the defense stipulated that if Charles Crohn and Thomas Angelica were called as witnesses, they would be qualified as experts in the testing and identification of controlled dangerous substances, and they would testify that the white rock defendant sold to Agent James tested positive for cocaine.

ANALYSIS
In his first three pro se allegations of error, defendant argues that the evidence was legally insufficient to support the verdict. He alleges that the testimony and other evidence was conflicting, inconsistent, confusing, and misleading in the following ways: (1) Agent James testified at trial that defendant sold him cocaine; however, the police report indicated that defendant sold cocaine to Agent Lionel Womack; (2) Agent Wilkie testified that he did not hear any conversation between Agent James and defendant, even though in the police report, Agent Wilkie indicated that Agent James' vehicle was equipped with a transmitter; (3) Agent James testified that it was unusual to exit his vehicle to purchase narcotics; however, Agent Wilson stated that that was not unusual; (4) Agent James initially testified that he asked defendant where he could get a "twenty," but then later testified that defendant *644 motioned to him that he wanted to sell cocaine; and (5) Agent Wilson testified that he never lost sight of defendant; however, no pre-recorded money was found on defendant.
Defendant notes that there was no audio or video recording of him selling drugs, that he was not found to be in possession of any money or drugs, and that if he had been in possession of money or drugs, he had no opportunity to dispose of them.
With respect to the issue of identity, defendant argues that the state failed to prove his identity as the perpetrator of the crime. He alleges that Agent Wilkie suggested his identity to Agent James before Agent James made a positive identification of him in a photographic lineup. He notes that Agent James was in the presence of the perpetrator for approximately a minute-and-a-half and, therefore, he was only able to provide a vague description of the perpetrator. Defendant further notes that he has many distinguishable facial features, especially very prominent eyes, that should have been noticed by the agent and included in the description had he been the perpetrator.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
Defendant was convicted of violating LSA-R.S. 40:967 A, distribution of cocaine. Pursuant to that statute, the state was required to prove that defendant knowingly or intentionally distributed cocaine. State v. Raines, 00-1941 (La.App. 5 Cir. 5/30/01), 788 So.2d 635, 640, writ denied, 01-1906 (La.5/10/02), 815 So.2d 833.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Zeno, 99-69 (La. App. 5 Cir. 8/31/99), 742 So.2d 699, 706, writ denied, 00-0105 (La.6/30/00), 765 So.2d 1065. When the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
In the instant case, as was stated in the previous memorandum, the evidence against defendant was overwhelming. Agent James testified that a man, whom he positively identified in a photographic lineup and in court as defendant, sold him narcotics in exchange for money. Agent Wilson testified that he observed the transaction and directed Agent Wilkie to defendant. Agent Wilkie testified that he completed a field interview card of defendant and took his picture shortly after the transaction. The credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; therefore, the credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Defendant argues that the evidence was insufficient to convict him based on several inconsistencies in the record.
First, defendant notes that the police report indicates that defendant sold cocaine to Agent Lionel Womack; however, Agent James testified at trial that defendant sold him cocaine. An examination of page 4 of the police report indicates that defendant did, in fact, sell cocaine to Agent Lionel Womack. However, this must have been a typographical error, because on page 5 of the police report in the narrative section, and in the supplemental police report, *645 it specifically states that defendant sold cocaine to Agent Allen James. Additionally, Agent James testified at trial that defendant sold him cocaine.
Second, defendant points out that Agent Wilkie testified that he did not hear the conversation between him and Agent James, even though in the police report, Agent Wilkie indicated that Agent James' vehicle was equipped with a transmitter. A review of the transcript indicates that Agent Wilkie testified that Agent James' vehicle was, in fact, equipped with a transmitter. However, Agent Wilkie explained that he was unable to hear what was going on, because Agent James got out of the vehicle to purchase the cocaine and did not have a transmitter on his person.
Third, defendant states that the testimony of Agents James and Wilson contradicted one another when Agent James testified that it was unusual for him to get out of his vehicle to make a transaction and Agent Wilson testified that it was not unusual for an undercover agent to exit the vehicle. A review of the record indicates that defendant is correct in his assessment of the testimony. Nevertheless, a reasonable juror could have found that the testimony was not contradictory, but that each agent had different past experiences with regard to the issue.
Fourth, defendant next states that there was a contradiction in Agent James' testimony regarding how he purchased the cocaine from him. He points out that Agent James initially testified that he asked defendant where he could get a "twenty," but that Agent James later testified that defendant motioned to him that he wanted to sell cocaine. The record reflects that Agent James did, in fact, testify that he asked defendant where he could get a "twenty." The record also reflects that Agent James testified that, when he drove around high-crime areas, he would raise one or two fingers to indicate how many rocks he wanted to buy, and that "everybody in those neighborhoods that do deal with crack cocaine or any kind of drugs would stop you and ask you what you wanted." Agent James further testified that no one other than defendant motioned to him and told him that he wanted to sell him crack cocaine.
The videotape taken that day shows that Agent James was driving a vehicle when he stopped and asked someone (who could not be seen on the videotape) where he could get a "twenty." The videotape also shows that as Agent James said this, he lifted one finger. When Agent James came upon defendant (who could be heard, but not seen on the videotape) a few moments later, he asked defendant where he could get a "twenty," but he did not motion with his finger. Based on the evidence, a reasonable juror could have concluded that Agent James mistakenly thought he had motioned to defendant, when in fact, he motioned to someone else just a few seconds earlier. It is noted that the videotape does not confirm or deny whether defendant motioned to Agent James as defendant cannot be seen on the videotape.
Fifth, defendant asserts that Agent Wilson testified that he never lost sight of defendant; however, defendant states that no recorded money was found on him. The record reflects that Agent Wilson testified that immediately following the transaction, the perpetrator walked quickly in between two apartment buildings. Contrary to defendant's assertions, Agent Wilson further testified that he was unable to see what apartment the perpetrator was going to and that he lost sight of the perpetrator for approximately three minutes. He asserted that the perpetrator then came back into view, and at that time, he contacted the other agents and told them he was going in closer. Agent Wilson *646 explained that, after a drug deal, the perpetrator would not just stand there, but would either go and hide the money or go and obtain more drugs to sell to the next person.
Although there are some inconsistencies in the record, they are minor and irrelevant compared to the overwhelming evidence of defendant's guilt. Also, it is noted that the defense did not question the agents at trial regarding these alleged inconsistencies even though it had the opportunity to do so on cross-examination.
With respect to the issue of identity, defendant alleges that Agent Wilkie suggested his identity to Agent James before Agent James made a positive identification of him in a photographic lineup. He claims that Agent James admitted that before he made a positive identification, Agent Wilkie showed him a picture and told him, "[t]his is the guy we dealt with."
The record shows that Agent Wilkie testified that he constructed a photographic lineup and showed it to Agent James who positively identified defendant. Agent Wilkie further testified that he did not tell Agent James which picture to choose. Agent James testified that Agent Wilkie gave him a photographic lineup and the videotape and said, "[t]his is the guy we dealt with." He subsequently positively identified defendant.
A review of the photographic lineup in question shows that it contains six photographs of black males. Therefore, contrary to defendant's assertions, Agent Wilkie did not hand defendant one picture, but rather, one sheet of paper containing six pictures. As such, defendant's assertion that Agent Wilkie suggested his identity to Agent James by handing him "a picture" before Agent James positively identified him is without merit.
In light of the foregoing, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant was guilty of distribution of cocaine and that the state negated any reasonable probability of misidentification.
In his first counseled allegation of error, defendant argues that the trial court erred in denying his motion for a mistrial. He contends that the prosecutor intentionally elicited inadmissible other crimes evidence from Agent Wilkie. The state responds that the reference in question was relevant to rebut testimony elicited by the defense and to explain the sequence of events leading up to defendant's arrest. The state further responds that the reference was not inadmissible evidence of other crimes because no details of prior offenses were provided. Finally, the state contends, alternatively, that any error was harmless.
During the cross examination of Agent Wilkie, defense counsel twice elicited testimony from Agent Wilkie that he did not find the pre-recorded twenty-dollar bill or any cocaine on defendant, yet defendant was placed into the rear of the police car.
During the redirect examination of Agent Wilkie, the prosecutor elicited testimony that defendant was arrested for "an unrelated matter." Defense counsel subsequently moved for a mistrial, which the trial judge denied, stating that
... [a]nd if I understand, the answer is, yes, you know full-well that there were warrants and that's what led to him being placed on the car. You left this jury with the impression that he placed him in there without a good cause.
* * *
the Court findsjust a minute that the Defense, in its examination of *647 the witness, approached this area and opened the door to that examination, for which the State had a lawful right to respond.
Defense counsel again noted her objection and began to reargue her position; however, the trial judge said he did not want to hear any further argument.
Generally, evidence of other crimes or bad acts committed by a criminal defendant is inadmissible at trial unless the probative value of the evidence substantially outweighs its unfair prejudicial effect, and unless it falls under one of the statutory or jurisprudential exceptions to the exclusionary rule. LSA-C.E. arts. 403 and 404; State v. Tuckson, 00-1408 (La.App. 5 Cir. 2/28/01), 781 So.2d 807, 814, writ denied, 01-1129 (La.1/25/02), 806 So.2d 671. LSA-C.Cr.P. art. 770(2) provides that a mistrial shall be ordered "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... [a]nother crime committed or alleged to have been committed by the defendant as to which evidence is not admissible[.]"
As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a "court official" for purposes of the article. However, an impermissible reference to another crime deliberately elicited by the prosecutor is imputable to the state and therefore triggers the rule mandating a mistrial. State v. Tuckson, supra at 814. The reference must be to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. State v. Bell, 02-1127 (La. App. 5 Cir. 2/25/03), 840 So.2d 656, 659. A mistrial is warranted only if a comment or remark results in substantial prejudice to the accused. LSA-C.Cr.P. art. 771; State v. Tuckson, supra at 814. An improper reference to other crimes evidence is subject to a harmless error analysis. Id.
It is well recognized that when one side has partially gone into a matter during its direct examination, the other side may fully go into it on cross-examination. State v. Edwards, 420 So.2d 663, 675 (La.1982). Any doubt as to the propriety or extent of cross-examination is resolved in favor of the cross-examination. State v. Edwards, 420 So.2d at 675.
The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a motion for a mistrial will not be reversed on appeal unless the court has abused its discretion. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, 363, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541. Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Overton, 618 So.2d 439, 441 (La.App. 5 Cir.1993).
In the instant case, we find that the agent's comment that defendant was taken into custody on an unrelated matter was not inadmissible evidence of other crimes or bad acts because it did not refer to any specific crime or bad act committed by defendant and was vague and ambiguous. Compare State v. Marsalis, 04-827 (La. App. 5 Cir. 4/26/05), 902 So.2d 1081, 1085-1086; State v. Smothers, 02-277 (La.App. 5 Cir. 12/30/02), 836 So.2d 559, writ denied, 03-0447 (La.10/10/03), 855 So.2d 329; State v. Sprinkle, 01-137 (La.App. 5 Cir. 10/17/01), 801 So.2d 1131, writ denied, 01-3062 (La.10/25/02), 827 So.2d 1174; State v. Tuckson, supra.
We further find that defense counsel "opened the door" to this line of questioning on redirect examination when she elicited *648 testimony during cross-examination of Agent Wilkie that defendant was placed in the back of the police car even though no money or drugs were found on him, thereby leaving the impression that defendant was apprehended without good reason. See State v. Edwards, 420 So.2d 663, 675 (La.1982); State v. Taylor, XXXX-XXXX (La.1/14/03), 838 So.2d 729, 746, cert. denied, 540 U.S. 1103, 124 S.Ct. 1036, 157 L.Ed.2d 886 (2004).
Nonetheless, even assuming the comment constitutes an impermissible reference to other crimes, such an error is subject to a harmless error analysis. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 102. In the instant case, the evidence against defendant was overwhelming. Agent James testified that a man, whom he positively identified in a photographic lineup and in court as defendant, sold him narcotics in exchange for money. Agent Wilson testified that he observed the transaction and directed Agent Wilkie to defendant. Agent Wilkie testified that he completed a field interview card of defendant and took his picture shortly after the transaction. Thus, we find that the verdict was surely unattributable to any other crimes reference charged by defendant.
In his second counseled allegation of error and in his fifth pro se allegation of error, defendant argues that his fifteen-year enhanced sentence is constitutionally excessive. Counsel, in brief, notes that defendant's sentence is extreme considering that he is a non-violent offender and that he sold a small amount of cocaine to a person he believed to be a fellow drug addict. The state responds that the record does not contain clear and convincing evidence to rebut the presumption of constitutionality to justify a sentence below the mandatory minimum sentence of fifteen years.
The trial judge sentenced defendant, as a second offender, to the mandatory minimum of fifteen years, stating in pertinent part:
Because the court has found the defendant to be a second felon (sic) offender, we take notice of Revised Statute 15:529.1 in imposing sentence as well as Article 894.1 which we previously considered and the statute mandates that the court must sentence the defendant to not less than one-half of the maximum penalty allowed by law, nor more than twice of that. One-half of the sentence is 15 years at hard labor, the maximum in this case being 30 years and, therefore, the court sentences the defendant to 15 years at hard labor ...
In his motion to reconsider sentence, defendant argued that his sentence was excessive because the amount of the drug sold was small and the agent's life was not put in danger.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La. App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992).
Three factors are considered in reviewing a trial court's sentencing discretion: *649 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. State v. Stewart, 03-920 (La.App. 5 Cir. 1/27/04), 866 So.2d 1016, 1028, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 832. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id.
A mandatory minimum sentence under the Habitual Offender Law may be reviewed for constitutional excessiveness. State v. Lindsey, 99-3256, 99-3302 (La.10/17/00), 770 So.2d 339, 342, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). In State v. Dorthey, 623 So.2d 1276, 1280-1281 (La.1993), the Louisiana Supreme Court specifically held that when a trial court determines the minimum sentence mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive.
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676. A court may only depart from the mandatory sentence if it finds clear and convincing evidence in the present case that would rebut the presumption of constitutionality. Id. The burden is on the defendant to rebut the presumption of constitutionality by showing:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
State v. Johnson, supra at 676, quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223.
Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in rare situations. State v. Davis, 01-123 (La. App. 5 Cir. 7/30/01), 792 So.2d 126, 132. The trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 384.
In this case, defendant was found to be a second felony offender. LSA-R.S. 15:529.1 provides that for a second felony offender, the sentence for imprisonment shall be not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. LSA-R.S. 40:967 B(4)(b), which is the penalty provision for a conviction of distribution of cocaine, provides for a sentence of not less than two years nor more than 30 years. As such, defendant was facing an enhanced sentence of between 15 years and 60 years. Therefore, defendant received the mandatory minimum sentence of imprisonment at hard labor for 15 years.
Defendant argues that his sentence was excessive because he was a non-violent offender. However, a defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. State v. Johnson, supra at 676. Additionally, defendant argues that his sentence is excessive considering the small amount of cocaine he sold. This *650 reason has been rejected as an exceptional circumstance to justify a downward departure from the minimum sentence mandated by the Habitual Offender Statute. State v. Fleming, 04-1218 (La.App. 5 Cir. 4/26/05), 902 So.2d 451, 460.
In the instant case, we note that the trial judge stated prior to sentencing that the statute "mandates" that he "must" sentence defendant to the mandatory minimum sentence. The record in this case reflects that defendant did not move for a downward deviation from the mandatory minimum sentence under Dorthey at sentencing. And, defendant offered no evidence that he was exceptional or that his circumstances were unusual enough to rebut the mandatory minimum sentence was constitutional and not excessive. See State v. Fisher, 03-326 (La.App. 5 Cir. 7/29/03), 852 So.2d 1075, 1084-1086, writ denied, 2003-2545 (La.5/14/04), 872 So.2d 510 and State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 225-228, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 388.
We find that the trial court did not abuse its discretion in sentencing defendant to the mandatory minimum sentence of 15 years.
In his fourth pro se allegation of error, defendant argues that he was denied effective assistance of counsel at the multiple bill and sentencing hearings. He specifically argues that defense counsel only had an approximately twenty minute recess to review the documents introduced by the state at the multiple bill hearing, and that twenty minutes was inadequate for counsel to examine the evidence and defend against it.
At the multiple bill hearing, the state called Lt. Patricia Adams who was qualified as an expert in the field of fingerprint taking and identification. During the direct examination of Lt. Adams, the state asked whether she had pulled the arrest register of defendant from his 1992 conviction. Defense counsel objected to the documents that the state was about to present because that day was the first day she had seen those documents. She further noted that those documents had that day's date on them, and that she had filed motions requesting copies of all documents that were to be used at the multiple bill hearing.
The state responded that Lt. Adams had to order those particular documents, and that it had just received them as well. The trial judge asked defense counsel what relief she was seeking. Defense counsel responded that she objected to those documents being introduced that day because she had not had a chance to review them. The trial judge stated that he was going to allow the defense to examine the documents, and that he would then hear whatever concerns the defense had.
After other matters were taken up, the trial judge returned to defendant's case. He stated for the record that defense counsel had had an opportunity to review the documents, and he noted that an objection was still before him. Defense counsel said that, after reviewing the document, she would withdraw that objection.
Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. McDonald, 04-550 (La.App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, writ denied, 04-3088 (La.4/1/05), 897 So.2d 599. To establish a claim for ineffective assistance of counsel, a defendant must demonstrate (1) that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that his counsel's errors or omissions resulted in prejudice *651 so great as to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. LaCaze, 99-0584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). To show prejudice, the defendant must demonstrate that, but for his counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, supra. An error is prejudicial if it was so serious as to deprive the defendant of a fair trial or a trial with a reliable result. Id.; State v. Washington, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 983.
The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight. State v. LaCaze, supra at 1078-1079. When assessing ineffective assistance claims, because there is no precise definition of reasonably effective assistance of counsel, these claims are assessed on the facts of the particular case as seen from the counsel's perspective at the time. Id. As a result, there is a strong presumption that the conduct of counsel will fall within the wide range of reasonable professional assistance. State v. LaCaze, supra at 1079.
Rather than on direct appeal, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Washington, supra at 983. However, when the record contains sufficient evidence to rule on the claim's merits and the issue is properly raised on appeal by assignment of error, it may be addressed in the interest of judicial economy. State v. McDonald, supra at 1042. We find that the record is sufficient to rule on the merits of defendant's claim.
After a review of the record, we find that defendant has not demonstrated that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms or that his counsel's errors or omissions resulted in prejudice so great as to undermine confidence in the outcome. In fact, the record shows that, after the multiple bill hearing, the trial judge found defendant to be a second felony offender rather than a third felony offender as the state had sought. Accordingly, we find this allegation to be without merit.
In his sixth pro se allegation of error, defendant argues that the trial court erred by not producing a complete record of the trial. He contends that the record is missing the voir dire examination and complete jury selection process, and opening and closing arguments of the state and the defense. He claims that the incomplete record prevents him from adequately and effectively conducting a review of his case, and that it prevents this Court from conducting an adequate appellate review.
The record indicates that voir dire and opening statements were not transcribed. The record also indicates that the court reporter noted that the state and the defense presented their closing arguments without objection, that the defense objected to the state's rebuttal argument, and that the court reporter presented that portion of the rebuttal argument with the court's ruling.
In State v. Harris, 01-2730 (La.1/19/05), 892 So.2d 1238, 1261, cert. denied, ___ U.S. ___, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005), the Louisiana Supreme Court discussed the issue regarding incomplete records on appeal (footnote added):
Although this Court has found reversible error when material portions of the trial record were unavailable or incomplete, "[a] slight inaccuracy in a record *652 or an inconsequential omission from it which is immaterial to a proper determination of the appeal w[ill] not cause . . ." reversal of a defendant's conviction. Castleberry, 98-1388 at p. 29, 758 So.2d at 773.[1] Moreover, a defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Id. (holding that the defendant failed to show any prejudice resulting from bench conferences not being transcribed and, therefore, there was no reversible error).
In the instant case, an examination of the record indicates that neither defendant's appellate counsel nor defendant has pointed out any errors that occurred during voir dire or in opening or closing statements that would necessitate a review of those portions of the record by either defendant or this panel. Thus, defendant has not shown any prejudice based on the missing portions of the transcript.
In his last counseled allegation of error, defendant requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. The review reveals one error patent in this case.
The transcript indicates that the trial judge ordered that the first two years of the enhanced sentence be served without benefit of parole, probation, or suspension of sentence, and that the balance of the sentence was to be served without benefit of probation or suspension of sentence. The commitment dated March 2, 2005 indicates that the enhanced sentence was to be served without benefit of probation or suspension of sentence. The minute entry of that same date indicates that the first two years of the enhanced sentence was to be served without benefit of parole, probation, or suspension of sentence. When there is a discrepancy between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand to allow the trial judge to correct the commitment and the minute entry to be consistent with the transcript. State v. Sam, 05-88 (La.App. 5 Cir. 5/31/05), 905 So.2d 379, 387.
For the above discussed reasons, the defendant's conviction and sentence are affirmed. This matter is remanded for further proceedings consistent with this opinion.
AFFIRMED; REMANDED.
NOTES
[1] State v. Castleberry, XXXX-XXXX (La.4/13/99), 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999).