NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-772

STATE OF LOUISIANA

VERSUS

ISAAC JEROME KING

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 300,968
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

OSWALD A. DECUIR
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

AFFIRMED.

John T. Giordano
Assistant District Attorney
Ninth Judicial District Court
P.O. Drawer 1472
Alexandria, LA 71309
(318) 473-6650
Counsel for Appellee:
    State of Louisiana

**Mark O. Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**Counsel for Defendant/Appellant:**
      **Isaac Jerome King**

**Isaac Jerome King**
**IN PROPER PERSON**
**Louisiana State Penitentiary**
**Angola, LA  70712**

**DECUIR, Judge.**

Defendant, Isaac Jerome King, was charged with armed robbery, a violation of La.R.S.14:64; simple robbery, a violation of La.R.S.14:65; aggravated battery, a violation of La.R.S.14:34; and possession of a firearm by a convicted felon, a violation of La.R.S.14:95.1.

Defendant was found guilty as charged and was sentenced as follows: 1) armed robbery – fifty years at hard labor without benefit of probation, parole, or suspension of sentence, to run consecutively with the sentence for possession of a firearm by a convicted felon; 2) simple robbery – seven years at hard labor to run concurrently with all other sentences; 3) aggravated battery – ten years at hard labor to run concurrently with all other sentences; 4) possession of a firearm by a convicted felon – ten years at hard labor without benefit of probation, parole, or suspension of sentence, to run consecutively with the sentence for armed robbery.

Defendant was also adjudicated a second felony offender, and his sentence for armed robbery was vacated, and he was sentenced to serve sixty years at hard labor.

Defendant is now before this court asserting two assignments of error. He contends the trial court erred in failing to grant his motion for mistrial, and the trial court erred in denying his hearsay objection to testimony regarding other crimes evidence.

## FACTS

At trial, Brice Patin and Jessie Roden both testified similarly. Patin's testimony indicated that he stopped at the traffic light at the intersection of Chester and Monroe Streets in Alexandria, and Defendant flagged him down and asked for a ride to the store. Roden testified that Patin asked Defendant if he needed a ride.

Patin stopped at a store, and Defendant informed Patin that he did not want to go to that particular store. Defendant then asked to go to a store on Bolton Avenue.

On the way to the store on Bolton, Patin stopped at a stop sign, and two men Defendant said were with him got into Patin's vehicle. One of the men who got into the vehicle tried to sell Roden marijuana. The same man took Roden's cell phone from her lap and took off running. Roden ran after him. Patin followed in his vehicle. Patin then got out and went to Roden. At that time, the remaining two men were still in Patin's vehicle. Roden used Patin's phone to call her own phone. The man who answered said he would return her phone in exchange for twenty dollars. Roden agreed and, when the man went to hand her the phone, Patin said the phone was not worth twenty dollars. When Patin turned around, Defendant was holding a gun and demanded his money.

Patin threw everything from his pockets onto the ground except $600.00 he had from selling a car. Patin testified that he put the envelope with the money back into his pocket. Defendant demanded the money. As Patin reached into his pocket, Roden stepped between Patin and the gun. Patin pushed Roden out of the way. He and Defendant then struggled on the ground. Patin threw his phone to Roden and told her to call the police. He and Defendant fought for five to ten minutes. Patin then stood up, and Defendant hit him across the eye with the butt of the gun twice, knocking him out. As he hit the ground, Patin heard someone say, "come on, come on, come on, Jerome, let's go." Roden also heard someone say "Jerome, they're calling the cops." Patin testified that when he regained consciousness his money and Roden's phone were gone. Roden testified that her purse was also gone.

Patin and Roden made in-court identifications of Defendant. They also identified Defendant in a photographic lineup.

As a result of being hit, Patin received seven stitches and had brain trauma. Patin testified that Roden was bitten by Defendant and received a tetanus shot. Roden did not know who bit her.

Defendant testified that he did not know Patin and Roden and did not take anything from them. Additionally, he did not own a gun. He admitted he had prior convictions for distribution of cocaine and conspiracy to distribute cocaine.

**ASSIGNMENT OF ERROR NUMBER ONE**

Defendant contends the trial court erred in denying his motion for mistrial which was based on the use of other crimes evidence.

At issue in this assignment of error is testimony regarding events that occurred on January 7, 2010. In its opening statement, the State set forth the following regarding the events of January 7: "about a week later Detective Howard runs across, uh, an incident whereupon the defendant was found to be in a backyard where a 38 snub nose revolver was also recovered. Independent of this and not in criminal activity but it puts him in location with the gun."

Sergeant Ronnie Howard was questioned about the events of January 7 as follows:

Q    So at that point you had a name Jerome, the race, and approximate age and physical characteristics of a suspect, but you didn't have any one suspect in mind at that point, is that correct?

A    Not at that point.

Q    What did you do with information? What did you begin doing?

A    I ...

Q    ... to try and identify who Jerome might be?

A    I started looking for reports with, uh, the name Jerome in them as they came in, and, uh, actually came upon a report that happened on January 7th. Where a Jerome was in the presence of a firearm when, uh, police were called to uh -- Midway.

3

Q      Okay. And, and in checking out that report did you find that in fact someone by the name of Isaac Jerome King was discovered to be in a backyard with a small handgun along with another person as well, correct?

A      That is correct.

Q      All right.

MR. KUTCH:

I want to put on the record and [sic] objection of the other crimes, evidence, and I'm going to move for a mistrial.

THE COURT:

All right, well, uh, your objection's overruled. This is one of the things that we discussed.

MR. KUTCH:

I realize, your Honor, but I still need to put it on the record.

THE COURT:

All right. You're objection's overruled.

EXAMINATION CONTINUED BY MR. LAMPERT:

Q      He -- we're not saying that he was committing a crime at that point, we're just saying you discovered a report showing that he was in the same backyard with a handgun?

A      That is correct.

Defendant contends "[t]his other crimes evidence was the January 7, 2010, arrest of Mr. King for having a firearm while in someone's backyard, and the firearm allegedly found in the incident."

Defendant cites La.Code Evid. art. 404(B)(1), which provides:

Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to

4

introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Defendant sets forth the criteria necessary for other crimes evidence to be admissible. He notes the State did not seek a *Prieur* hearing. Instead, evidence of his involvement in the January 7, 2010 incident was adduced, and the handgun seized at that time was brought to trial for the victims and the investigating officer to examine and testify about. Defendant contends the trial court erred in denying his objections to the State's eliciting testimony regarding an unrelated offense and questioning witnesses about an unrelated handgun. Defendant alleges this allowed the State to wave a dangerous-looking revolver throughout the trial in order to show he was a bad person. Defendant also alleges the handgun had no probative value. Further, it had nothing to do with the December 26, 2009 offense.

Defendant contends the State made no effort to argue that the handgun and testimony regarding the indictment on January 7 were admissible pursuant to any exception listed in La.Code Evid. art. 404(B). However, even if the evidence had some minimal independent relevance, the probative value was substantially outweighed by the dangers of unfair prejudice to the jury, confusion of the issues, misleading the jury, and undue delay or waste of time.

Defendant contends the only reason the State gave for using the evidence and testimony at issue was to show how the photo lineup was set up. However, that did not explain its extensive use of an unrelated handgun, and it was not needed to explain the photo lineup.

The State contends other crimes evidence is not applicable in this case. The State additionally contends Defendant's possession of the firearm on January 7, 2010, was an integral part of and a continuation of the crime on December 26,

2009. Furthermore, the procedural requirements of *Prieur* are not applicable to evidence that forms an integral part of the charged offense.

We find the State did not present other crimes evidence at the trial of this matter. In *State v. Smart*, 05-814 (La.App. 5 Cir. 3/14/06), 926 So.2d 637, *writ denied*, 06-1225 (La. 11/17/06), 942 So.2d 533, the fifth circuit found that an officer's comment that the defendant was taken into custody on an unrelated matter was not inadmissible evidence of other crimes or bad acts because it did not refer to any specific crime or bad act committed by the defendant and was vague and ambiguous.

In *State v. Marsalis*, 04-827 (La.App. 5 Cir. 4/26/05), 902 So.2d 1081, the fifth circuit concluded testimony that the defendant was housed in the maximum-security section of jail where inmates who had already been sentenced were housed was not other crimes evidence and was admissible as proof of the charged offense of battery on a correctional employee. Further, the testimony did not specify any prior bad acts by the defendant, and by the nature of charged offense, it was clear that the defendant was in jail for something that suggested that he committed or allegedly committed prior bad acts.

In *State v. Celestine*, 98-1166 (La.App. 5 Cir. 3/30/99), 735 So.2d 109, *writ denied*, 99-1217 (La. 10/8/99), 750 So.2d 178, a police officer was asked if he attempted to identify the person who broke into the victim's home. The officer stated that he ran the subject's name through the national crime computer and got a past criminal history. The defendant objected and requested a mistrial. The fifth circuit found the officer did not refer to any specific crime committed by the defendant and, under those circumstances, there was no abuse of discretion in the trial court's refusal to declare a mistrial.

6

In *State v. Malone*, 43,548 (La.App. 2 Cir. 11/19/08), 998 So.2d 322, *writ denied*, 09-198 (La. 10/30/09), 21 So.3d 275, the second circuit found that testimony from the victim's cousin that the defendant had loaded and shot the gun a month before she shot the victim was not other crimes evidence and was admissible.

The State's comments in its opening statement and Sergeant Howard's testimony indicated Defendant was in the presence of a firearm. Contrary to Defendant's assertion, there was no testimony that he was arrested or any details of a crime given by any witness. As there was no statement that Defendant was in actual or constructive possession of the firearm, there was no evidence of a bad act or other crime. Accordingly, the trial court did not abuse its discretion in denying defense counsel's motion for mistrial.

There was no objection when Patin and Roden were shown the handgun or questioned about it. However, there was an objection, which the trial court sustained, when the State sought to have the handgun admitted into evidence. Because Defendant did not object when Patin and Roden were shown and questioned about the handgun, any issue regarding the handgun is not properly before the court for review. La.Code Crim.P. art. 841.

For the reasons asserted herein, this assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER TWO**

In his second assignment of error, Defendant contends the trial court erred in denying his hearsay objection as to testimony regarding other crimes evidence.

At trial, Sargent [sic] Howard was questioned as follows:

Q     And at that point, that initial interview and getting the medical records, did you know who the suspect was at that point?

A     I didn't know who it was.

7

Q      Did you have any idea what you were even looking for at that point or who you were looking for in any manner?

A      Uh, from talking to the victim I had an idea that I was looking for a black male, uh, in his early twenties.

Q      Okay.  Did you have any names to go from?

A      Uh, yes, early on in the. . .

MR. KUTCH:

I'm going to object, your Honor.  If the name came from some third party that's hearsay.

THE COURT:

Okay.

MR. LAMPERT:

It's all going to show why he did what he did.

THE COURT:

It's going to show why he did what he did and is intended for that purpose and not for the truth of the matter.  So you may answer.  You're objection's overruled.

Defendant contends the State's use of other crimes evidence without any effort to produce non-hearsay witnesses to testify about the circumstances surrounding them clearly violated his right to confront and cross-examine all witnesses against him, as raised by his hearsay objection to the line of questioning.

In *State v. Rainey*, 470 So.2d 422 (La.App. 3 Cir. 1985), the State asked a witness during cross-examination if she knew whether the defendant had ever been previously convicted of anything.  At that time, defense counsel did not object to the question on the grounds that the State was trying to introduce other crimes evidence.  Instead, defense counsel objected solely on the grounds that the witness's answer would be hearsay.  On appeal, it was alleged for the first time that the State's cross-examination of the witness concerning the defendant's prior

8

convictions was highly prejudicial and should not have been allowed by the trial court. This court found that defense counsel did not object on the grounds that the State was introducing evidence of other crimes; thus, La.Code Crim.P. art. 841 precluded the defendant from raising the objection for the first time on appeal.

The case before the court is exactly like *Rainey* in that defense counsel objected as follows: "I'm going to object, your Honor. If the name came from some third party that's hearsay." This objection did not refer to other crimes evidence. The error complained of was not first asserted in the trial court. Accordingly, this assignment will not be considered by this court.

## DECREE

The Defendant's convictions are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.