598 So.2d 615 (1992)
STATE of Louisiana
v.
Sylvester TRACKLING.
No. 91-KA-0312.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 1992.
*616 Harry F. Connick, Dist. Atty., Hans Sinha, Asst. Dist. Atty., New Orleans, for plaintiff/appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant/appellant.
Before BARRY, BYRNES and JONES, JJ.
BARRY, Judge.
The defendant was convicted of aggravated battery (La.R.S. 14:34) and attempted aggravated rape (La.R.S. 14:27, 14:42). He was sentenced to forty years at hard labor on the rape charge and ten years at hard labor on the aggravated battery charge, the sentences to run concurrently. He was multiple billed as a second felony offender and re-sentenced to fifty years at hard labor without benefit of good time.
The defendant argues that (1) it was reversible error for the State to elicit testimony from the arresting officer regarding defendant's silence in the aftermath of his arrest and Miranda warnings; (2) the evidence is insufficient to convict for attempted aggravated rape; and (3) the trial court erred by imposing a sentence without benefit of good time.

FACTS
Officer Ponsetti testified that on April 22, 1990, at about 6:20 p.m., he responded to a call that a possible attempted aggravated rape was in progress at 8839 Cohn Street. When he neared that location five to ten minutes later, several people flagged down Ponsetti and his partner and directed them to the defendant's residence.
Ponsetti approached the house and heard a female crying for help and fighting or struggling. He knocked on the door, and after ten to fifteen seconds, a young black female opened the door. She was nude, covered with perspiration and hysterical. An S-shaped laceration on her chest and several lacerations on her hands were bleeding. The woman was unarmed. She told Ponsetti that she had gone to the defendant's residence to get "high." Ponsetti found no evidence of drugs on the premises.
Ponsetti testified that he and his partner found the defendant standing behind the bed, unclothed, with a butcher knife in his right hand. Ponsetti pulled his revolver and ordered the defendant to drop the knife. The defendant was combative and had to be subdued. He was dressed, handcuffed, placed in the police car, and advised of his Miranda rights.
Ponsetti described the condition of the apartment as in a state of disarray. Female clothing was on the floor and a bloodstained brassiere with a broken clasp was on the bed. The bed sheets were covered with fresh blood.
Ponsetti and his partner examined the defendant and did not find any cuts, scratches or abrasions, nor did the defendant complain of being hurt. Ponsetti stated that if the defendant had been injured, he would not have been accepted by Central Lockup and would have been sent to Charity Hospital. The testimony of Officer Balancier is the same as Officer Ponsetti's.
The victim, Stephanie Brown, testified that she first met the defendant the day of the incident when he approached her and said, "Hey, baby," as if he knew her. They discussed smoking crack cocaine and it was agreed that Brown would engage in sexual intercourse in exchange for his purchasing the crack. After drinking alcohol, Brown and the defendant caught a bus to the defendant's residence.
Brown said that they went straight to the bedroom to smoke the crack. She stated that he pulled at her and ordered her to undress. He retrieved a sharp object, similar to a nail file, and flicked it across her neck several times. The defendant then reached for a large butcher knife from a table next to the bed, and Brown began to *617 scream. He cut her with the knife, making an S-shaped cut across her chest. She struggled, he cut her hands then cut her blouse off with the knife. Brown ran to the kitchen and was caught by the defendant and pinned to the floor with his knees. He stated, "You're going to suck my thing," and Brown said she feared for her life.
The defendant's version is that Brown approached him at Broad Street and Esplanade Avenue even though he didn't know her. He stated that she would perform oral sex in exchange for crack cocaine. They returned to Broad and Columbus Streets and had several drinks with defendant's uncle and cousin. Defendant and Brown then took a bus to his residence on Cohn Street.
Defendant testified that he purchased crack cocaine from someone on his street and then smoked it with Brown using a crack pipe she carried in her bosom. After smoking the crack, they went into the bedroom and took their own clothes off and Brown performed oral sex. The defendant stated that he left the room to wash and when he returned Brown had stolen his money. The defendant contradicted himself repeatedly regarding the amount of money allegedly stolen and the amount of money in his house. Defendant claims that he and Brown fought about the money and she cut him with the butcher knife before he cut her with the file. Defendant denied that he cut Brown with the butcher knife. He said Brown did not scream and he, not Brown, opened the door for the police. Defendant claimed that his arm was bleeding from a cut, however, at the preliminary hearing, he testified that Brown cut him in the chest region. (The police did not find any bodily injury).
Defendant denies that he had the butcher knife when the police arrived. He claims the knife was in the bedroom and he gave it to the officers.
The State's witnesses, Valerie Farnell and Hubert Jarrow, (defendant's neighbor and her uncle) testified that they heard a woman screaming from inside 8839 Cohn. Jarrow called the police anonymously and continued to hear intermittent screams for help until the officers arrived. Neither witness heard a man's voice. Jarrow said a nude woman answered when the officers knocked on the door.
The defense witnesses, Joseph Gray, Luther Earl Brown, and A.C. Duck testified that they had never seen Ms. Brown before, and that Ms. Brown and defendant left together on the Broad Street bus. Duck testified that Ms. Brown agreed with the defendant to exchange sex for drugs.

IMPROPERLY ELICITED TESTIMONY
The defendant argues that it was reversible error for the State to elicit testimony from the arresting officer regarding defendant's post-Miranda silence. The testimony proceeded:
Q: What did you advise him of?
A: I advised him of his Miranda warning...
Q: What did Mr. Trackling say?
A: He acknowledged that he did understand his rights.
Q: Did he make any statements to you at that time?
A: No, he did not.
(Tr.Trans. p. 10-11).
There were three other instances during trial where witnesses were briefly questioned as to defendant's post-arrest silence, but no objection was raised. The only objection was that the question was repetitive.
Defendant relies on Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In Doyle the U.S. Supreme Court held that use of a defendant's post-Miranda silence by the prosecution to impeach an exculpatory story offered at trial is fundamentally unfair and a deprivation of due process. The court reasoned that post-arrest silence may simply be an exercise of Miranda rights and is "insolubly ambiguous." Doyle, 96 S.Ct. at 2244-2245. Defendant also points to State v. Montoya, 340 So.2d 557 (La.1976), where the court ruled that it was reversible error for the prosecutor to call attention to the arrestee's silence at the time of the arrest. The *618 defendant did not take the stand and the court felt there was even less justification to refer to post-arrest silence than in those cases where the defendant testifies.
Defense counsel concedes there was no motion for a mistrial nor was there a timely objection. In Doyle and Montoya, contemporaneous objections were made. La.C.Cr.P. art. 841, Louisiana's contemporaneous objection rule, mandates that an objection must be made at the time of occurrence. The purpose of this rule is: (1) to require counsel to notify the trial judge of an error at a time when the judge may correct it, and (2) to prevent counsel from allowing an error to pass without comment in hopes of a favorable verdict, and if the verdict is unfavorable to raise the error on appeal. State v. Arvie, 505 So.2d 44, 47 (La.1987).
Defendant argues that the testimony regarding defendant's post-arrest silence fits into the category of plain error, obviating the need for a contemporaneous objection or a motion for a mistrial. In rare instances, Louisiana courts have held that lack of a contemporaneous objection will not preclude appellate review if the error is so fundamental that it threatens the reliability of the fact-finding process. State v. Arvie, 505 So.2d at 47. The Arvie court pointed to State v. Williamson, 389 So.2d 1328 (La.1980) and State v. Green, 493 So.2d 588 (La.1986) as examples when contemporaneous objections are unnecessary. In Williamson, a conviction of attempted second degree murder was reversed because the trial judge erroneously instructed the jury regarding the definition of the charged crime. Id. 389 So.2d at 1331. In Green, which involved a charge of third offense theft, the conviction was overturned because the trial court failed to instruct the jury that evidence of defendant's prior two theft convictions could be considered only for the purpose of sentence enhancement and not to determine guilt or innocence. Id. 493 So.2d at 592.
Even repeated reference to post-arrest silence for impeachment purposes does not affect the reliability of the fact-finding process to the extent that the error warrants review absent a contemporaneous objection. The use of an accused's post-arrest silence does not undermine the validity of the fact-finding process to the same extent as the types of trial errors committed in Williamson and Green. State v. Arvie, 505 So.2d at 48.
Here, as in Arvie, the application of the "plain error" doctrine is unwarranted, and this error may not be reviewed in the absence of a contemporaneous objection.
This assignment is without merit.

SUFFICIENCY OF EVIDENCE
Defendant argues that the evidence is insufficient to convict for attempted aggravated rape.
Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. La.R.S. 14:41(A). Aggravated rape occurs when the victim is prevented from resisting the act, because the offender is armed with a dangerous weapon. La.R.S. 14:42(A)(3). An attempt is committed when a defendant, after having formed the attempt to commit rape, does an act for the purpose of and intending directly toward the accomplishing of the objective. La.R.S. 14:27(A). Mere preparation to commit rape shall not be sufficient to constitute an attempt. La.R.S. 14:27(B).
The standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783-84, 61 L.Ed.2d 560 (1979). The State must prove that the defendant had the specific intent to commit a crime and committed an act tending directly toward accomplishment of that crime.
The defendant concedes that, viewing the evidence in the light most favorable to the State, he was armed with a dangerous weapon and attempted to use that weapon to overcome the victim's resistance. However, the State failed to prove specific intent to engage in anal or vaginal intercourse. Defendant claims that the *619 record reflects only an intent to engage in oral sex.
The State presented sufficient evidence to convince a rational trier of fact that the defendant had a specific intent to rape Ms. Brown. Brown admitted that she agreed to engage in sexual intercourse in exchange for crack cocaine, but the defendant pulled on her and ordered her to undress. He attempted to cut her with a sharp file and cut her on the chest with a butcher knife. He chased her to the kitchen, pinned her to the floor, cut her clothes off, and told her, "You're going to suck my thing." Brown claims that she screamed for help from the time defendant pulled out the butcher knife.
The testimony of the arresting officers and the State's witnesses supports Ms. Brown's story. The officers heard sounds of a struggle and a female screaming for help. Brown was hysterical when she answered the door, unclothed, sweating and bleeding from lacerations. Defendant was nude, perspiring, and holding a butcher knife. He resisted the officers and had to be subdued. The defendant was not cut or harmed. Officer Ponsetti testified that he found a blood-stained brassiere with a broken clasp on the bed, and female clothing on the floor next to the bed. The bed sheets were covered with fresh blood.
The defendant's neighbors testified that they heard a woman scream for help from inside the residence and that a nude black woman opened the door when the police arrived.
The circumstances clearly provide sufficient evidence for a jury to convict the defendant of attempted aggravated rape.[1]
This assignment is without merit.

GOOD TIME
Defendant's final argument is that the trial court erred by imposing a sentence without benefit of good time. Defendant was multiple billed as a second felony offender and sentenced to fifty years at hard labor without credit for good time. The State concedes that according to State v. Melancon, 536 So.2d 430 (La.App. 4th Cir. 1988), the trial court erred. Even if a defendant is not eligible to earn good time, a trial court has no authority to expressly deny or award good time. State v. Melancon, 536 So.2d at 434. It should be recognized, however, that La.R.S. 15:571.3(C) mandates that the defendant's sentence must be served without good time.

CONCLUSION
The conviction is affirmed. The sentence is amended to delete the statement that it be served without benefit of good time since La.R.S. 15:571.3 governs. The sentence is affirmed as amended.
CONVICTION AFFIRMED; SENTENCE AMENDED; AFFIRMED AS AMENDED.
NOTES
[1] State v. Redd, 554 So.2d 780, 784 (La.App. 4th Cir.1988). In Redd, the defendant's conviction of attempted aggravated rape was upheld under the following circumstances:

... [A]t issue is only whether the defendant had a specific intent to engage in intercourse with the victim since he only ordered her, from across the room, to remove her pants. He did not touch her in a sexual manner, nor did he remove any of his own clothing or communicate anything to the victim prior to escape to indicate what the purpose for the attack was.
... only because the victim was able to escape was she spared any further attack by the defendant.