715 So.2d 714 (1998)
STATE of Louisiana
v.
Bryan R. WHITE.
No. 98-KA-91.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 1998.
*715 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler, Donald A. Rowan, Gretna, for plaintiff-appellee.
Kevin V. Boshea, Regan & Boshea, New Orleans, for defendant-appellant.
Before GAUDIN, DUFRESNE and WICKER, JJ.
GAUDIN, Judge.
Bryan R. White was convicted by a 12-person jury in Jefferson Parish of possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967(A), and sentenced to 25 years at hard labor as a multiple felony offender.
On appeal, White assigns these district court errors:
(1) the trial judge erred in allowing State Exhibit One (rocks) to be introduced in evidence;
(2) the trial judge wrongly denied a motion for a new trial, based on the introduction of improper evidence;
(3) the evidence as adduced at trial failed to prove the necessary elements of possession with intent to distribute cocaine, thus the verdict of the jury was contrary to the law and evidence;
(4) the trial judge erred in its denial of the motion for new trial based on insufficiency of the evidence; and
(5) the defendant was denied a fair trial by a state witness commenting on the defendant's post-arrest silence.
For the following reasons, we see no reversible error in any of these allegations of error; consequently, White's conviction and sentence are affirmed.

BACKGROUND
From the testimony adduced at trial on June 16 and 17, 1997, this is what apparently happened on the afternoon of September 16, 1996:
Deputies Myron Gaudet and Antonio Frere of the Jefferson Parish Sheriff's Office were on patrol in the Bunch Village area. The neighborhood was known to the officers for its high instances of crime, particularly *716 narcotics trafficking. The officers' objective was to uncover street-level drug activity. Gaudet and Frere were riding in an unmarked police unit, dressed in plain clothes.
At 1:45 p.m., the officers turned from Milan Street onto South Sibley and saw a late model Ford Taurus parked in the middle of the street. The car had a temporary license plate. White was standing at the driver's window, leaning into the car. It appeared to the officers that White was conversing with the car's driver, or engaging in some sort of transaction.
When the officers drew within 30 feet of the Taurus, Frere turned on a blue police light and siren. At that point the driver of the Taurus drove away, and White looked directly at the officers. White turned to walk away, and as he did he placed a hand into his pants pocket, removed a brown pill bottle and discarded it. The officers saw the bottle land on the sidewalk in front of an abandoned "crack" house.
The officers identified themselves as police, and told White they wanted to speak with him. They led White to the front of the police car. When asked what he was doing in the area, White responded that he was talking to someone he knew. Frere retrieved the pill bottle, and found it contained thirteen pieces of what the officers recognized as crack cocaine. Each piece was individually wrapped in small plastic bags. Gaudet placed White under arrest. The evidence was given to a narcotics agent, who performed a field test. The test was positive for cocaine. Charles Krone, an expert in narcotics analysis and identification, testified that he later performed laboratory tests on a sample of the rocks recovered, which tests were positive.
Cornelius and Margaret Vaughn, who are brother and sister, testified for the defense. They live on South Sibley Street, and saw White arrive there on the afternoon of September 16th. The Vaughns stated that White was there to visit his grandmother. They said that they did not see a Ford Taurus parked in the street, nor did they see White speak to anyone driving a car of that description. According to the Vaughns, the officers drove up and ordered White to come to them. White complied, and the officers placed him in handcuffs. The officers looked around the yard of White's grandmother, and found nothing. They then released White from the handcuffs. The officers searched through trash in the yard of a vacant house and found a pill bottle under a brick. They placed White under arrest and handcuffed him again.

ASSIGNMENTS 1 AND 2
White contends that the trial judge should have suppressed the cocaine (State's Exhibit 1) as it was seized pursuant to an invalid stop and that the trial judge erred in denying the new trial motion, which was based, in part, on the same grounds.
Initially, we note that there is nothing in the record to show that White filed a motion to suppress the evidence either before or during trial. LSA-C.Cr.P. Art. 703(F) provides:
"A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress."
Accordingly, White is not entitled to appellate review of this issue. See State v. Smith, 681 So.2d 980 (La.App. 1 Cir.1996), writ denied, 692 So.2d 390 (La.1997); and In the Interest of Nunez, 657 So.2d 506 (La.App. 4 Cir.1995).
Nonetheless, if addressed on the merits, White's claims have little substance. The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by state and federal jurisprudence. Reasonable cause for an investigatory stop is something less than probable cause to arrest; it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference.
The officers had reasonable suspicion to stop White and question him. Gaudet and *717 Frere testified that they knew the neighborhood to be a high crime area, frequented by drug dealers. The reputation of an area as a high crime area is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable cause for an investigatory stop. White was also engaging in conduct which is associated with drug trafficking.

ASSIGNMENTS 3 AND 4
By these assignments, White contends the evidence at trial was insufficient to prove possession of cocaine with intent to distribute. He further argues that the trial judge erred in denying his motion for new trial, which was partly based on grounds of insufficient evidence.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. In order to prove guilt by circumstantial evidence, the state must exclude every reasonable hypothesis of innocence. This statutory test is not separate from the Jackson sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
The crime of possession of cocaine with intent to distribute requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it. See LSA-R.S. 40:967(A) and State v. Lassere, 683 So.2d 812 (La.App. 5 Cir.1996), writs denied at 692 So.2d 445. White first claims the state failed to sufficiently prove that all of the rocks seized actually consisted of crack cocaine.
The state's expert, Charles Krone, testified that he tested four of the thirteen rocks, and that each of the four was positive for cocaine. Louisiana jurisprudence accepts the use of such random sampling of substances for identification as controlled dangerous substances. White could have employed his own expert to rebut Krone's conclusions but he did not do so.
White further contends that the state failed to prove intent to distribute. LSA-R.S. 14:10 defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute. See State v. Ramoin, 410 So.2d 1010 (La.1981). This Court has recognized a series of factors which may give rise to a reasonable inference that a defendant had the specific intent to distribute: previous attempts to distribute, whether the drug was in a form consistent with distribution to others, the amount of the drug, expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only, and paraphernalia evidencing an intent to distribute. See State v. Lassere, supra.
Lieutenant Tim Miller, a group supervisor with the narcotics division of the sheriff's office, was accepted by the trial court as an expert witness in the area of packaging and distribution of street level narcotics. Miller testified that a typical cocaine user buys no more that two rocks of crack at a time, smokes his purchase, then returns to the dealer for more. It was Miller's opinion that thirteen rocks of crack cocaine was an amount greater than was consistent with personal use. The amount, along with the packaging in individual plastic bags, was consistent with the sale of cocaine. According to Miller, pill bottles are commonly used by dealers to carry crack.
Lt. Miller's expert testimony, which was accepted by the jury, was sufficient to show White's criminal intent. The state was not required to present evidence that defendant actually engaged in a sale or exchange *718 of cocaine. An intent to distribute can be inferred from the quantity of narcotics found in the defendant's possession. See State v. Trahan, 425 So.2d 1222 (La.1983); State v. Page, 680 So.2d 700 (La.App. 4 Cir.1996), writ denied at 688 So.2d 522 (La.1997). These assignments of error have no merit.

ASSIGNMENT NO. 5
By this assignment, White complains that he was prejudiced by the mention of his post-arrest silence by a state witness at trial.
The testimony of which defendant complains was give by Deputy Frere in response to cross-examination:
Q. Did you attempt to question Mr. White at the time, Deputy Frere?
A. No, sir, I didn't. He did not wish to make a statement after he was read his rights.
The disputed testimony was not elicited by the prosecutor, but by defense counsel. Moreover, White did not move for a mistrial or an admonition to the jury. We see no trial court error.
There are no errors patent.
AFFIRMED.