MARC E. JOHNSON, Judge.
 

 |2The Defendant, Dwight Collins, Jr., appeals his conviction of possession with intent to distribute heroin, a violation of La. R.S. 40:966 A. We affirm the conviction, amend the sentence and remand for corrective action.
 

 The Defendant was arraigned in August of 2007 and pled not guilty. He was found guilty by a jury on October 28, 2008. On November 7, 2008, the trial court sentenced the Defendant to imprisonment at hard labor for 35 years, the first five years without benefit of parole, probation, or suspension of sentence. The Defendant filed a motion to reconsider sentence that was denied. This timely appeal followed.
 

 On July 12, 2007, Detective David Canas and other employees of the Jefferson Parish Sheriffs Office (JPSO) Narcotics Division were investigating three subjects (later identified as the Defendant, Dwayne Labranch, and Jonathan Lawrence) who they believed were selling narcotics from a hotel room in Metairie, Louisiana. At some point, the Defendant came out of the room and was detained. When Detective Canas entered the room, he observed in plain view a powdered substance on one of the dressers that later tested positive for heroin.
 

 | sDetectíve Canas obtained a search warrant. During the execution of the warrant and search of the room, the officers found a clear plastic bag containing four small packages of heroin on the dresser, a clear plastic bag containing marijuana under the mattress, a digital scale inside the dresser, sandwich bags on a table, a razor blade on the floor, four cell phones, and $1,145.00 in U.S. currency ($410.00 on the dresser and $735.00 on Lawrence). During a search incident to arrest, the JPSO found three hotel room keys: one on Labranch, one on Lawrence, and a third one on a table which the Defendant said belonged to him.
 

 After the State rested its case, the defense called Labranch who testified that the Defendant was a good friend he had known for 12 years. Labranch admitted that he had pled guilty to possession with intent to distribute heroin and marijuana in connection with this case. Labranch
 
 *76
 
 testified that he had rented the room at the hotel on the day in question, and that the items found in the room, including the heroin, belonged to him. He claimed that he was using heroin that day, and that he had it for personal use. Labranch stated that he never gave the Defendant a key to that room and that the Defendant did not participate with him in owning or possessing the drugs. Nor did the Defendant sell the drugs. Labranch contended that the Defendant did not know the drugs were in the room. Labranch disputed the Detective’s claim that the heroin was in plain sight. Labranch contended that it was in a hotel safe in his room. He also contended that he found the digital scale in the room and that it did not belong to him. Labranch said that the Defendant was in the room with him that day for one hour. He claimed that the Defendant remained the entire hour, and never went in or out of the room that he could remember. La-branch said that the Defendant left about 20 or 30 minutes before the police came.
 

 On rebuttal, Detective Canas testified that, prior to the Defendant’s arrest, he observed the Defendant participating in a narcotics transaction.
 

 LOn appeal, the Defendant asserts that the prosecution improperly introduced in its case-in-chief, and made repeated references to the post arrest silence of the Defendant, in violation of the holding in
 
 Doyle v. Ohio
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and its progeny. In his second assignment of error, he asserts that in rebuttal the State improperly introduced evidence of other crimes without legal foundation or basis. Third, he claims that the verdict is contrary to the law and the evidence. Fourth, the Defendant argues that the trial judge erred in denying the motion to reconsider sentence. Fifth, the Defendant asserts that the trial judge erred in sentencing him to thirty five (35) years at hard labor. In his sixth assignment of error, the Defendant claims that a State witness delivered improper expert testimony as to the ultimate facts at issue at trial.
 

 A) SUFFICIENCY OF THE EVIDENCE
 
 [1]
 

 The Defendant argues that the evidence was insufficient to support the verdict. He contends that the evidence was found in a hotel room not registered to him, and the operational keys were found in the possession of the two other subjects. He also contends that he was not found in the hotel room, and no physical evidence was found in his actual possession. He asserts that the State failed to prove that he was in constructive possession of the evidence and notes that no inculpatory statements were made.
 

 The State responds that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to prove beyond a reasonable doubt that the Defendant was in constructive, if not actual, possession of the heroin.
 

 In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a | ¿reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Neal,
 
 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657,
 
 cert. denied,
 
 535 U.S.
 
 *77
 
 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
 

 In cases involving circumstantial evidence, the trial court must instruct the jury that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
 
 State v. Mitchell,
 
 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83;
 
 State v. Washington,
 
 03-1135, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
 

 A determination of the weight of the evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses.
 
 State v. Macon,
 
 06-481, p. 7-8 (La.6/1/07), 957 So.2d 1280, 1285-1286;
 
 State v. Silman,
 
 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the
 
 Jackson
 
 standard of review.
 
 Macon,
 
 06-481 at 7-8, 957 So.2d at 1286. It is not the function of an appellate court to assess credibility or re-weigh the evidence.
 
 Id.
 

 The Defendant was convicted of violating La. R.S. 40:966 A which makes it unlawful for any person, knowingly and intentionally to produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I. Heroin is classified as a controlled dangerous substance in Schedule I.
 

 The essential elements of the crime are 1) possession and 2) specific intent to distribute. The first element includes both actual and constructive possession.
 
 State v. Sandifer,
 
 95-2226, p. 10 (La.9/5/96), 679 So.2d 1324, 1331;
 
 State v. Williams,
 
 98-1006, p. 6 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69,
 
 writ denied,
 
 99-1077 (La.9/24/99), 747 So.2d 1118. A person who was not in physical possession of narcotics may have constructive possession when the drugs are under that person’s dominion or control.
 
 Williams,
 
 98-1006 at 6, 735 So.2d at 69. The factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are: 1) the defendant’s knowledge that illegal drugs were in the area, 2) his relations with the person found to be in actual possession, 3) the defendant’s access to the area where the drugs were found, 4) evidence of recent drug use by the defendant, 5) the existence of paraphernalia, and 6) evidence that the area was frequented by drug users.
 
 Williams,
 
 98-1006 at 7, 735 So.2d at 69.
 

 According to Detective Canas, during the surveillance of the hotel room on the day of the arrest, the officers watched the Defendant leave and enter the hotel room several times, and they eventually detained him outside the room. After Detective Canas entered the room and looked around, he observed four small packages of heroin in plain view on the dresser. Each were wrapped individually with clear plastic, and all were contained inside a clear plastic bag. The officers obtained a search warrant for the room, and the officers recovered marijuana, a digital scale, sandwich bags, a razor, and $1,145.00 in cash.
 

 The jury believed the Detective’s testimony that the heroin was found in plain view on the dresser. The evidence further
 
 *78
 
 shows the Defendant was good friends with Labranch, the person who rented the room, and the Defendant 17admitted he had access to the area where the drugs were found.
 
 [2]
 
 In addition, prior to the arrest, Detective Canas saw the Defendant leave the room with the two co-defendants, get into a vehicle, conduct a drug transaction, and return to the hotel room. There was no evidence of recent drug use by the Defendant, the fourth factor, but the State proved the existence of paraphernalia in the room. Finally, evidence of the sixth factor, that the area was frequented by drug users, was shown by Labranch’s testimony that he was in the hotel room using the heroin.
 

 We find that the State produced sufficient evidence to show that the Defendant constructively possessed the drugs based on the factors discussed in
 
 Williams.
 

 The next essential element of the crime is intent to distribute. La. R.S. 14:10 defines specific criminal intent as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act. The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which give rise to reasonable inferences of intent to distribute.
 
 State v. White,
 
 98-91, p. 5 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 717,
 
 writ denied,
 
 98-2043 (La.11/25/98), 729 So.2d 577. Factors which may give rise to a reasonable inference that a defendant had the specific intent to distribute include 1) previous attempts to distribute, 2) whether the drug was in a form consistent with distribution to others, 3) the amount of the drug, 4) expert or other testimony showing the amount found in the defendant’s possession to be inconsistent with personal use only, and 5) paraphernalia evidencing an intent to distribute.
 
 Id.,
 
 98-91 at 5-6, 715 So.2d at 717. This Court has held that by | describing the factors as useful, the Louisiana Supreme Court did not require that the evidence fall squarely within those listed factors to be sufficient for the jury to find the requisite intent to distribute.
 
 State v. Mosley,
 
 08-1318, p. 9 (La.App. 5 Cir. 5/12/09), 13 So.3d 705, 711.
 

 In this case, the State provided sufficient evidence to show that the Defendant intended to distribute the drugs based on the factors discussed in
 
 White.
 
 Detective Canas witnessed the Defendant and the two-codefendants distributing drugs before the arrest.
 
 [3]
 
 Further, Detective Canas testified that, based on his experience as a narcotics detective, he believed that the heroin was packaged for distribution purposes.
 
 [4]
 
 That evidence alone is sufficient
 
 *79
 
 proof of the Defendant’s intent to distribute.
 
 [5]
 
 Nevertheless, the evidence further shows that the amount of the drug retrieved in this case was 1.85 grams, which is inconsistent with personal use only, according to the testimony of Sergeant Klein. He testified that one-tenth of a gram of heroin would sell on the streets for $20.00 and that there were 20 “hits” of heroin if it was broken down to sell. Finally, Detective Canas and Sergeant Klein testified to the paraphernalia found in the room which evidences intent to distribute narcotics, thereby satisfying the fifth factor.
 

 The jury found the State’s witnesses more credible than Labranch. As we stated previously, it is not the function of an appellate court to assess credibility or reweigh the evidence.
 
 Macon,
 
 06-481 at 7-8, 957 So.2d at 1286. The testimony of those witnesses proved both possession and intent to distribute. Thus, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier | gof fact could have found that the evidence was sufficient under the Jackson standard to support the conviction.
 

 B) REFERENCES TO POST ARREST SILENCE OF THE DEFENDANT
 

 The Defendant next argues that the prosecution improperly introduced repeated references to the post-arrest silence of the Defendant in its case-in-chief, thereby violating the holding in
 
 Doyle v. Ohio.
 
 He contends that, although his counsel failed to object to the testimony regarding his post-arrest silence, the trial judge had a duty to intervene and stop the questioning to preserve the fairness of the proceedings, and the State had a duty to refrain from exploiting defense counsel’s errors. He further contends that this issue is still reviewable on appeal under La. C. Cr. P. art. 920
 
 [6]
 
 and the jurisprudential exceptions to the contemporaneous objection rule.
 

 The State responds that this issue has not been preserved for appeal, since the Defendant failed to object to the alleged violations as required by the contemporaneous objection rule. The State further responds this issue is not reviewable as an error patent under La. C. Cr. P. art. 920 and that there are no jurisprudential exceptions to the contemporaneous objection rule.
 

 The Defendant challenges three references to his post-arrest silence that were made by the State, twice during its direct examination of Detective Canas and a third time during its direct examination of Sergeant Klein. Detective Canas and Sergeant Klein both testified that, after the subjects were advised of their right to remain silent by Sergeant Klein, the officers nevertheless asked them who owned the drugs and a card key that was on a table in the room. Both witnesses said that the subjects refused to answer the question regarding the drugs. Sergeant Klein 110also testified that, after being advised of his Miranda
 
 [7]
 
 rights the Defen
 
 *80
 
 dant voluntarily broke his silence and admitted that one of the keys belonged to him. In addition, the prosecutor asked Detective Canas the question about the drugs a second time, and Detective Canas reiterated that the subjects refused to answer the question. Detective Canas also testified that the three subjects refused to sign the forfeiture form in reference to the money that the officers took from them.
 

 In
 
 Doyle,
 
 the United States Supreme Court held that reference to a defendant’s silence at the time of his arrest and after he received the
 
 Miranda
 
 warnings, for impeachment purposes, violates the defendant’s due process rights. The Supreme Court explained, “every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested ... it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.”
 
 Doyle,
 
 426 U.S. at 617-18, 96 S.Ct. at 2244-45.
 
 [8]
 

 Under La. C. Cr. P. art. 771, when the prosecutor or a witness makes a reference to a defendant’s post-arrest silence, the trial court is required, upon the request of the defendant or the State, to promptly admonish the jury. When an admonishment is not sufficient to assure the defendant a fair trial, the court may grant a mistrial upon motion of the defendant.
 
 State v. Robinson,
 
 04-964, pp. 14-15 (La.App. 5 Cir. 2/15/05), 896 So.2d 1115, 1126,
 
 (citing State v. Kersey,
 
 406 So.2d 555, 559 (La.1981)). The granting of a mistrial is within the discretion of the trial court.
 
 Robinson,
 
 04-964 at 15, 896 So.2d at 1126.
 

 n A brief reference to a defendant’s post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes.
 
 Id,.
 

 The State asserts that the Court need not reach this issue because the Defendant failed to object to the line of questioning. We agree.
 

 In similar cases, the courts have held that the defendant must make contemporaneous objections to the prosecutor’s questions which elicit these facts.
 
 See State v. Arvie,
 
 505 So.2d 44 (La.1987);
 
 State v. Divine,
 
 98-812 (La.App. 5 Cir. 5/19/99), 738 So.2d 614,
 
 writ denied,
 
 99-2393 (La.2/4/00), 754 So.2d 222,
 
 cert. denied,
 
 530 U.S. 1219, 120 S.Ct. 2227, 147 L.Ed.2d 258 (2000); and
 
 State v. Trackling,
 
 598 So.2d 615 (La.App. 4 Cir.1992),
 
 judgment reversed in part on, other grounds,
 
 609 So.2d 206 (La.1992).
 

 In Ame, the Louisiana Supreme Court noted that only when an error was so fundamental that it strikes at the very essence of the reliability of the fact-finding process does the Court refuse to apply the contemporaneous objection rule as a bar to review of the alleged error.
 
 Arvie,
 
 505 So.2d at 47. There, the prosecutor re
 
 *81
 
 ferred in cross-examination to an accused’s post-arrest silence for impeachment purposes. The Court held that the defendant •was not relieved of his burden of objecting contemporaneously to the reference because it did not have the same substantial effect on the reliability of the fact-finding process as a) when the judge gives a jury instruction which erroneously defined the charged crime, or b) when the judge omits a jury instruction which was an essential prerequisite to the constitutionality of a statute.
 
 Id.,
 
 505 So.2d at 48.
 

 In
 
 Divine,
 
 an officer testified to the defendant’s silence after he was advised of his Miranda rights. There, we found that the defendant was mandated to object contemporaneously to the alleged error because the trial judge did not have the | ^opportunity to admonish the jury. Furthermore, there was no indication of prose-cutorial misconduct in that case, and the error, if any, appeared to be harmless in view of other evidence and testimony.
 
 Id.,
 
 98-812 at 16-17, 738 So.2d at 623.
 

 In
 
 Trackling,
 
 the State elicited testimony from the arresting officer regarding defendant’s post-Miranda silence, and in three other instances during trial the witnesses were questioned briefly as to defendant’s post-arrest silence, but no objection was raised. The defendant argued the testimony in question fit into the category of plain error, obviating the need for a contemporaneous objection or a motion for a mistrial. Citing
 
 Arvie,
 
 the appellate court found that the application of the plain error doctrine was unwarranted, and that the error may not be reviewed in the absence of a contemporaneous objection.
 
 Id.,
 
 598 So.2d at 617-18.
 

 Here, like
 
 Arne, Divine,
 
 and
 
 Trackling,
 
 the Defendant’s attorney did not object when questions were asked by the prosecutor regarding the Defendant’s post-arrest silence. Thus, as in
 
 Divine,
 
 the trial judge did not have the opportunity to admonish the jury. In addition, as found by the courts in
 
 Arvie
 
 and
 
 Trackling,
 
 the application of the “plain error” doctrine is unwarranted, since even repeated reference to post-arrest silence for impeachment purposes does not affect the reliability of the fact-finding process to the extent that the error warrants review absent a contemporaneous objection. Therefore, we find that this issue was not properly preserved for appeal.
 

 C) OTHER CRIMES EVIDENCE
 

 The Defendant argues that the State improperly introduced other crimes evidence without providing notice to him. He specifically objects to Detective Canas’ testimony that he observed the Defendant engage in a drug transaction. The Defendant contends that the State could not use this testimony for impeachment purposes because the prior bad act did not result in either an arrest or a conviction and because he did not testify.
 

 | iSThe State responds that Detective Ca-nas’ testimony was properly given in rebuttal to the testimony of defense witness, Dwayne Labranch. The State further responds that the error, if any, was harmless because of the overwhelming evidence of the Defendant’s guilt.
 

 Dwayne Labranch testified for the defense. He stated that the Defendant did not sell drugs with him, and was in the hotel room with him that day for approximately one hour. He testified that the Defendant did not leave the room at all until 20 or 30 minutes before the police entered.
 

 The State called Detective Canas as a rebuttal witness. Detective Canas testified that, prior to the Defendant’s arrest, he observed defendant involved in a narcotics transaction. He was “a hundred
 
 *82
 
 percent sure” that what he witnessed was a narcotics transaction. Detective Canas explained that he saw the Defendant, La-branch, and Lawrence leave Room 443 and get into a vehicle. The defense objected to this line of questioning, which was overruled. Defense counsel argued that the Defendant did not open the door to this testimony, and that the officer was testifying to another crime. The trial judge replied, “I think your witness did.” Nevertheless, Detective Canas then testified that the Defendant and the two-co-defendants went to another location where he watched Lawrence selling narcotics to another subject in a hand-to-hand transaction inside the vehicle. Detective Canas said that the Defendant and Labranch remained inside the vehicle during the transaction. Following the transaction, the three subjects went back to the hotel to the same room.
 

 On cross-examination, Detective Canas testified that he did not charge the Defendant with that crime, and he had no narcotics or money present in evidence as a result of that crime. During redirect examination, Detective Canas indicated that the prosecutor had instructed him not to go outside a certain line of questioning.
 

 |H After Detective Canas completed his testimony, defense counsel objected, stating that “all of this line has been very prejudicial,” and he demanded a mistrial. The prosecutor replied that the question was raised by defense counsel, and that defense counsel knew from side bar discussions that the prosecutor’s intention was to prevent a mistrial. The trial judge then denied the motion.
 

 In
 
 Mosley, supra,
 
 the defendant complained that the trial court erred in allowing the State to introduce records of his prior narcotics convictions during cross-examination of a defense witness. During direct examination by defense counsel, the witness testified that she had never known defendant to sell narcotics. The trial judge subsequently allowed the prosecutor to question the witness about the defendant’s prior convictions finding that the defense had opened the door to the questions.
 

 On appeal in
 
 Mosley,
 
 we found that, by questioning the witness regarding whether she knew defendant to be a drug dealer, defense counsel opened the door to rebuttal questioning by the State and, therefore, the questions were proper.
 

 As in
 
 Mosley,
 
 we find in this case that the defendant opened the door to the Detective Canas’ rebuttal testimony regarding the drug transaction by asking La-branch if the Defendant had sold drugs.
 

 Additionally, evidence of previous attempts to distribute narcotics may be considered in establishing intent.
 
 State v. Jackson,
 
 05-923, p. 11 (La.App. 5 Cir. 3/28/06), 926 So.2d 72, 79,
 
 writ denied,
 
 06-1589 (La.1/8/07), 948 So.2d 121. Thus, evidence of a defendant’s involvement in prior drug deliveries is clearly an exception to the general prohibition against evidence of other crimes.
 
 Id.,
 
 05-923 at 11-12, 926 So.2d at 79. Further, when a defendant opens the door to such evidence,
 
 Prieur
 

 [9]
 

 notice is not required.
 
 State v. Marcotte,
 
 01-1586, p. 13 (La.App. 3 Cir. 5/15/02), 817 So.2d 1245, 1253,
 
 writ denied,
 
 02-1687 (La.2/7/03), 836 So.2d 96.
 

 Nevertheless, even assuming the testimony constituted an impermissible reference to other crimes, such an error is subject to a harmless error analysis.
 
 State v. Smart,
 
 05-814, p. 13 (La.App. 5 Cir. 3/14/06), 926 So.2d 637, 648,
 
 writ denied,
 
 06-1225 (La.11/17/06), 942 So.2d 533. The test for determining harmless error is
 
 *83
 
 whether the verdict actually rendered in the case was surely unattributable to the error.
 
 Smart,
 
 05-814 at 13, 926 So.2d at 648,
 
 citing, State v. Johnson,
 
 94-1379, p. 18 (La.11/27/95), 664 So.2d 94, 102.
 

 We have already determined that the evidence against the Defendant was sufficient to convict under the
 
 Jackson
 
 standard. Thus, we find that the verdict was surely unattributable to any other crimes reference, and thus, even if there was any error in overruling the Defendant’s objection to the testimony, the error was harmless.
 

 D)
 
 IMPROPER EXPERT TESTIMONY
 

 [10]
 

 The Defendant argues that Detective Canas testified improperly as an expert regarding the ultimate issue of guilt, in violation of La. C. Cr. P. art. 704.
 
 [11]
 
 He specifically objects to the detective testifying that the heroin was packaged for distribution purposes and that the scale, razor blade, and sandwich bags were used in the sale of narcotics. He contends that the detective usurped the jury’s role as the fact finder.
 

 The State responds that this issue was not properly preserved for review because the Defendant did not lodge contemporaneous objections at the Inappropriate times. Alternatively, the State argues that, even if the trial court erred by admitting this testimony, the error was harmless because the testimony was cumulative.
 

 Detective Canas testified during direct examination that he was a detective with the JPSO and had been employed with them for nine years. He stated that he was currently employed as a detective in the narcotics division and that he had been in that division for the past six years. He explained that he had made numerous arrests in those six years at all levels of narcotics dealing, from street trafficking to large search warrants, and his experience included all amounts of narcotics.
 

 After discussing his background, the prosecutor asked Detective Canas what he believed the packaging of the heroin was indicative of, based on his experience as a narcotics detective for six years and in making numerous narcotics arrests. Defense counsel objected, stating that the witness had not been qualified as an expert and could not render an opinion. The prosecutor said, “I’m asking his experience [sic] of six years as a narcotics detective, has he come across that type of packaging, and what has it meant to him.” The trial judge said the witness could answer that question. Afterwards, Detective Canas testified, “That’s for distribution purposes.”
 

 Detective Canas later testified without objection that, based on his experience, the scale and the razor were indicative of the sale of narcotics. Defense counsel did object when the prosecutor began to ask what the presence of sandwich bags indicated to him based on his experience. However, there was no ruling on that objection, and the detective continued his testimony, noting the sandwich bags were indicative of possession with intent to distribute.
 

 
 *84
 
 The prosecutor subsequently asked Detective Canas what he believed was occurring when he saw the razor blade, digital scale, money, and the other items in 117the hotel room. The detective responded that he thought that narcotics were being sold. When asked why he arrested all three people, the detective replied that anyone who walked into that room would have knowledge that illegal narcotics activity was going on, as the drugs were in plain view and in sandwich bags. Furthermore, the detective stated he knew there were three people in the room.
 

 On cross-examination, Detective Canas testified that he arrested the Defendant for possession with intent to distribute because of the way the heroin was packaged, “and the baggies, the scale, and all that.”
 

 Sergeant Klein testified that he has been working for the JPSO for nine years, and was in the narcotics division at the time of the arrest. Sergeant Klein further testified, without objection, that the officers retrieved from the hotel room a small amount of heroin, some sandwich bags, cellular phones, some marijuana, digital scales, money, “everything that’s associated with the possession with the intent to distribute heroin.”
 

 On redirect examination, the Sergeant identified the items found in the hotel room, including the heroin. He stated, without objection, that “the heroin; earlier I said it’s a small amount of heroin, being as it is a small package, but one tenth of a gram of heroin will sell on the streets for Twenty Dollars, and there would be ten Twenty Dollar packages of heroin in an Equal pack, and that’s how I referred to it when I explain it to people.” When asked how much heroin was in there, Sergeant Klein replied, again without objection, “that would be twenty hits of heroin, if you broke it down to sell it. And again, with the scale and the sandwich bags, that’s— and the money, that’s consistent with somebody in possession, with the intent to distribute heroin.”
 

 Detective Canas and Sergeant Klein were not qualified as expert witnesses. Therefore, they testified as lay witnesses. La.C.E. art. 701 states:
 

 |18If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
 

 (1) Rationally based on the perception of the witness; and
 

 (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 In
 
 State v. Boyd,
 
 94-641 (La.App. 5 Cir. 12/28/94), 649 So.2d 80, defendant argued that the trial court erred in allowing opinion testimony from a detective who was not qualified as an expert. During trial, the prosecutor made a request to qualify the detective as an expert in the area of street packaging and sale of rock cocaine. Defense counsel objected to the intent to qualify the officer as an expert, but the trial judge stated that the officer could testify as to his knowledge and ordinary experience as a narcotics officer without being qualified as an expert. Questioning resumed, and the detective was asked about several seized items and their possible use in making crack cocaine, and about the manner of packaging marijuana for distribution.
 

 Citing La.C.E. art. 701, this Court concluded that, although the witness was not questioned extensively about his professional experience in the area of narcotics sales, his answers indicated that he was testifying based upon his knowledge and personal experience. We found no error in the trial court’s admission of this testimony as it was based on his personal perceptions.
 
 Id.,
 
 94-641 at 7-8, 649 So.2d
 
 *85
 
 at 84-85. The Court in
 
 Boyd
 
 reviewed the merits of the objection even though defense counsel in that case only objected to the prosecutor’s intent to qualify the officer as an expert.
 

 In this case, when the prosecutor first asked Detective Canas what the packaging of the heroin indicated to him, based on his experience, defense counsel lodged a contemporaneous objection asserting that the Detective was not qualified to testify as an expert. Defense counsel lodged another contemporaneous objection |19on the grounds that the testimony would be speculative when the prosecutor first asked the detective what the sandwich bags indicated to him, based on his experience. Like the Court in
 
 Boyd,
 
 we find that the issue has been properly preserved for appellate review.
 

 In regard to the merits of the issue, the trial judge allowed Detective Canas and Sergeant Klein to testify only about matters which were based on their own perceptions. Additionally, Detective Canas testified in depth as to his professional experience. He explained that he had six years experience of being a narcotics detective at all levels of narcotics dealing and that he had made numerous arrests during that time. Thus, we find that the trial court did not err by admitting their testimony.
 

 E) DENIAL OF MOTION TO RECONSIDER SENTENCE
 

 The Defendant argues that his 35-year sentence is excessive, and that the trial court erred in denying his motion to reconsider the sentence.
 
 [12]
 
 He contends that his conduct was not as severe as other individuals similarly situated, that he does not fall within the category of the most egregious violators of this offense, and that the record does not support a sentence that is 70 percent of the maximum possible sentence. He further argues that the trial judge did not cite La. C. Cr. P. art. 894.1 during sentencing, that a small amount of heroin was found, that the co-defendant testified that the hotel room and contraband were in his possession, that no contraband was found on the Defendant, and the Defendant was outside of the hotel room when he was arrested.
 

 Prior to sentencing, the trial judge stated that he knew the Defendant had three prior felony convictions in Jefferson Parish and was advised that the Defendant had one in New Orleans. The trial judge said that this made the [gnDefendant a fourth felony offender, which would have subjected him to a sentencing range of 20 years to life. The trial judge then sentenced the Defendant to 35 years, the first five years to be served without benefit of probation, parole, or suspension of sentence.
 

 At the sentencing hearing, the Defendant orally noticed his intent to appeal “this.” He subsequently filed a motion to reconsider sentence as required by La. C. Cr. P. art. 881.1. In his motion he only argued that the sentence was excessive and harsh.
 

 When a defendant fails to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based the defendant is limited to a review of his sentence for constitutional excessiveness only.
 
 State v. Stevenson,
 
 05-52, p. 11 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, 55,
 
 writ denied,
 
 05-2592 (La.6/2/06), 929 So.2d 1247. In this case, the Defendant failed to state the specific grounds for reconsideration of his sentence.
 

 
 *86
 
 In addition, the Defendant did not raise the issue of the trial judge’s failure to comply with La. C. Cr. P. art. 894.1 in the trial court or in his motion to reconsider sentence. Thus, he is precluded from raising this issue on appeal.
 
 State v. Hawkins,
 
 06-739, p. 22 (La.App. 5 Cir. 9/25/07), 968 So.2d 1082, 1095,
 
 writ denied,
 
 07-2272 (La.4/18/08), 978 So.2d 347.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Smith,
 
 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4.
 

 A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 Id.
 
 A sentence is grossly disproportionate if, when the crime and punishment are considered in light | ⅞| of the harm done to society, it shocks the sense of justice.
 
 State v. Lawson,
 
 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
 

 A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 State v. Dorsey,
 
 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.
 
 State v. Pearson, 07-
 
 332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
 

 In reviewing a sentence for abuse of the trial judge’s discretion, the appellate court considers 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 Id.,
 
 07-332 at 15-16, 975 So.2d at 656.
 

 The penalty for possession with intent to distribute heroin is imprisonment for not less than five nor more than 50 years at hard labor, at least five years of which must be served without benefit of probation, or suspension of sentence, and the possible imposition of a fine of not more than $50,000.00. La. R.S. 40:966 B(l).
 

 Prior to the amendment to the statute in 2001, the penalty was mandatory life imprisonment.
 
 [13]
 
 We have found no cases since the amendment that are comparable to the facts and sentence here. We note, however, that prior to the amendment of the statute, we upheld a mandatory life sentence for a conviction of possession with intent to distribute heroin even though the crime is not a violent offense, and the defendant was only 21 years old.
 
 State v. Jackson,
 
 99-1368, p. 8 (La.App. 5 Cir. 5/17/00), 762 So.2d 253, 258,
 
 writ denied,
 
 00-1948 (La.9/21/01), 797 So.2d 60.
 

 22 It is well established that the legislature has a unique responsibility to define criminal conduct, and to provide for the penalties to be imposed against persons engaged in such conduct.
 
 Jackson,
 
 99-1368 at 8, 762 So.2d at 258. The penalties provided by the legislature reflect the degree to which the criminal conduct affronts society.
 
 Id.
 
 Courts must apply these penalties unless they are found to be unconstitutional.
 
 Jackson,
 
 99-1368 at 8, 762 So.2d at 258.
 

 
 *87
 
 The Defendant here possessed heroin with the intent to distribute it from a hotel room. He has four prior felony convictions which would have subjected him to a sentencing range of 20 years to life. The State did not file a habitual offender bill. Although the Defendant received a sentence in the upper end of the sentencing range, we find that the trial judge did not abuse his discretion in sentencing the Defendant to 35 years at hard labor, and in denying the Defendant’s motion to reconsider sentence.
 

 ERROR PATENT
 

 The record was reviewed for patent errors in accordance with La. C. Cr. P. art. 920. See,
 
 State v. Oliveaux,
 
 312 So.2d 337, 338 (La.1975);
 
 State v. Hicks,
 
 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547. The review reveals errors patent in this case.
 

 1) Errors in the commitment
 

 The commitment indicates that the sentence on the conviction for possession with intent to distribute heroin was to be served concurrently with the sentence in case number 07-4498; however, the transcript does not reflect that the trial judge ordered the sentence to be served concurrently with any other sentence. Where there is a conflict between the transcript and commitment, the transcript prevails.
 
 State v. Collins
 
 07-0310, p. 3 (La.10/12/07), 966 So.2d 534, 535;
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Thus, we will remand the case to the trial court for | ^correction of the commitment to conform to the transcript.
 
 State v. Jackson,
 
 07-975, p. 13 (La.App. 5 Cir. 4/15/08), 985 So.2d 246, 254.
 

 2) Sentence irregularity
 

 The trial judge sentenced the Defendant to imprisonment at hard labor for 35 years, the first five years to be served without benefit of parole, probation, or suspension of sentence. However, La. R.S. 40:966 B(l) does not require a defendant’s sentence to be served without benefit of parole. Accordingly, the sentence is amended to allow for the possibility of parole in accordance with the applicable sentencing provisions.
 
 See State v. Wright,
 
 06-1141 (La.2/16/07), 949 So.2d 404 and
 
 State v. Battaglia,
 
 03-692, p. 11 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 711,
 
 writ denied,
 
 04-1701 (La.4/29/05), 901 So.2d 1058. In addition, the trial court is ordered to correct the commitment in accordance with this opinion.
 
 See State v. Burks,
 
 04-1435, p. 16 (La.App. 5 Cir. 5/31/05), 905 So.2d 394, 404,
 
 writ denied,
 
 05-1696 (La.2/3/06), 922 So.2d 1176. Finally, the Clerk of Court for the district court is ordered to transmit the original of the amended commitment to the officer in charge of the institution in which the Defendant is incarcerated.
 
 See
 
 La. C. Cr. P. art. 892 B(2);
 
 State ex rel. Stark v. State,
 
 06-1457 (La.2/16/07), 949 So.2d 409, 410.
 

 3)Post-conviction relief notification
 

 La. C. Cr. P. art. 930.8 A states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. Here, the transcript shows that the trial judge advised the Defendant that he had “two years from the date the sentence becomes final to file post conviction relief applications.” The commitment, however, states that the trial judge advised the Defendant that he had “two (2) years after judgment of conviction and sentence 12.thas become final to seek post-conviction relief.” As noted previously, the transcript prevails.
 

 The failure of the trial court to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisement in
 
 *88
 
 complete.
 
 State v. Holmes,
 
 08-719, p. 14 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 283. In the past, we ordered the trial court to properly advise the defendant of the prescriptive period for filing an application for post-conviction relief pursuant to La. C. Cr. P. art. 930.8 by written notice within ten days of the rendition of this Court’s opinion and then to file written proof in the record that the defendant received the notice.
 
 Id.
 
 However, recently we have chosen to correct this error in the opinion rather than by remanding the case, citing
 
 State v. Morris,
 
 40,322, pp. 4-5 (La.App. 2 Cir. 1/25/06), 920 So.2d 359, 363. See
 
 Holmes,
 
 08-719 at 14, 10 So.3d at 283;
 
 State v. Davenport,
 
 08-463, pp. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451,
 
 writ den.,
 
 19 So.3d 473, 2009-0158 (La.10/16/09).
 

 We find this procedure an appropriate method of notifying the Defendant of the prescriptive period for post-conviction relief. Therefore, we hereby advise the Defendant that no application for post-conviction relief, including an application which seeks an out of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 and 922.
 

 DECREE
 

 Accordingly, the Defendant’s conviction is affirmed. The case is remanded to the trial court to amend and correct the commitment to conform with the sentencing transcript. In addition, we amend the sentence to allow the possibility of parole, in accordance with the applicable sentencing provisions of La. R.S. 40:966. The trial court is ordered to correct and amend the commitment to reflect the | ^availability of parole accordingly. Finally, the Clerk of Court for the district court is ordered to transmit the original of the amended commitment to the officer in charge of the institution in which the Defendant is incarcerated.
 

 CONVICTION AFFIRMED, SENTENCE AMENDED, CASE REMANDED FOR CORRECTION OF COMMITMENT.
 

 [1]
 

 . The sufficiency of the evidence issue is addressed first in accordance with
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992).
 

 [2]
 

 .See
 
 State v. Marshall,
 
 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881,
 
 writ denied,
 
 03-0909 (La.9/26/03), 854 So.2d 345 where the defendant had possession of a key to the apartment where cocaine was found.
 

 See also State v. Brown,
 
 04-1194, at 8 (La.App. 5 Cir. 4/26/05), 902 So.2d 542, 547-48,
 
 writ denied,
 
 05-1637 (La.2/3/06), 922 So.2d 1173 where we found that the defendant had access to the area that the drugs were found because the evidence showed that defendant was inside the house shortly before the search warrant was executed and a detective saw defendant leave the house during his surveillance.
 

 [3]
 

 .
 
 See State v. Hearold,
 
 603 So.2d 731 (La.1992) (the combination of prior drug distribution and the
 
 amount
 
 of drugs found in the bag was sufficient evidence to convict defendant of possession with intent to distribute.) See
 
 also State v. Marshall,
 
 02-1067 at 5-9, 841 So.2d at 886-88 (defendant seen engaging in an apparent narcotics sale the day prior to the search.)
 

 [4]
 

 . The Defendant raises the Detective’s testimony as an expert in his sixth assignment of error.
 

 [5]
 

 .
 
 See State v. Decay,
 
 07-966, p. 8 (La.App. 5 Cir. 6/19/08), 989 So.2d 132, 138,
 
 writ denied,
 
 08-1634 (La.4/13/09), 5 So.3d 161 in which we found that the detective's testimony that the powder cocaine was individually packaged for sale was sufficient proof of defendant's intent to distribute.
 

 [6]
 

 . La. C. Cr. P. art. 920 provides:
 

 The following matters and no others shall be considered on appeal:
 

 (1) An error designated in the assignment of errors; and
 

 (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.
 

 [7]
 

 . Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [8]
 

 .
 
 Doyle
 
 only prohibits the use of defendant’s silence at the time of arrest and after
 
 Miranda
 
 warning for impeachment purposes.
 
 Robinson,
 
 04-964 at 14, 896 So.2d at 1126;
 
 State v. Arvie,
 
 505 So.2d 44, 46 (La.1987)). An oblique and obscure reference to a defendant's post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant's failure to respond to police questioning does not constitute reversible error.
 
 Id.
 
 Thus, the State may pursue a line of questioning that attempts to summarize the extent of the investigation, when such questions are not designed to exploit tire defendant's failure to claim his innocence after his arrest in an effort to impeach his testimony or attack his defense.
 
 Robinson,
 
 04-964 at 14, 896 So.2d at 1126.
 

 [9]
 

 .
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973).
 

 [10]
 

 . We addressed the sentencing issue out of order and discuss it prior to the patent error discussion.
 

 [11]
 

 . La. C. Cr. P. art. 704 states:
 

 Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
 

 [12]
 

 . The two assignments are discussed together since they are related, and defendant addressed them together in his brief.
 

 [13]
 

 . See, 2001 La. Acts No. 403, § 4, effective June 15, 2001;
 
 State
 
 v.
 
 Dick,
 
 06-2223, p. 4 (La.1/26/07), 951 So.2d 124, 127.